| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:     11/17/09<br>Response Deadline: 10/8/09 |

------------------------------------------------------------------------x
                                                                  :

In re:                                                    :       SIPA LIQUIDATION

BERNARD L. MADOFF INVESTMENT SECURITIES  :       Index No. 08-01789 (BRL)
LLC,

                       Debtor.

IRVING H. PICARD, Trustee for the Liquidation of  :      Adv. Pro. No. 09-01305 (BRL)
Bernard L. Madoff Investment Securities LLC,

                      Plaintiff,

    - against -

COHMAD SECURITIES CORPORATION, et al.,

                  Defendants.
------------------------------------------------------------------------x

## DEFENDANT ROBERT M. JAFFE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNTS ONE, THREE, FOUR, FIVE, SIX, SEVEN, EIGHT, TEN, AND ELEVEN OF THE COMPLAINT

Stanley S. Arkin (# 1373)
Howard J. Kaplan (#4492)
Peter B. Pope (#4626)
David M. Pohl (# 8609)
ARKIN KAPLAN RICE LLP
590 Madison Avenue
New York, NY 10022

*Attorneys for Defendant Robert M. Jaffe*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. (ii)

PRELIMINARY STATEMENT ............................................................................................. 1

THE ALLEGED FACTS ........................................................................................................ 2

DISCUSSION .......................................................................................................................... 5

I.    THE TRUSTEE HAS FAILED TO PLEAD THE ACTUAL FRAUD CLAIMS ............. 6

II.   THE TRUSTEE'S CONSTRUCTIVE FRAUD CLAIMS FAIL .................................... 12

III.  THE TRUSTEE'S TURNOVER AND ACCOUNTING CLAIM FAILS
AS A MATTER OF LAW ................................................................................................ 15

IV.  THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIM FAILS ................................. 15

V.   THE TRUSTEE'S OBJECTION TO JAFFE'S SIPC CLAIM IS INAPPLICABLE ...... 15

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Alnwick v. European Micro Holdings, Inc.*,
  281 F. Supp. 2d 629 (E.D.N.Y. 2003) .................................................................. 7, 8

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
  373 B.R. 262 (S.D.N.Y. 2007) ................................................................................. 9

*Ashcroft v. Iqbal*,
  --- U.S. ---, 129 S.Ct. 1937 (2009) ................................................................. passim

*Balaber-Strauss v. Sixty-Five Brokers* (*In re Churchill Mortg. Inv. Corp.*),
  256 B.R. 664 (Bankr. S.D.N.Y. 2000) ........................................................ 12, 13, 14

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.*,
  396 B.R. 810 (Bankr. S.D.N.Y. 2008) ..................................................................... 9

*Fannie Mae v. Olympia Mortg. Corp.*,
  2006 U.S. Dist. LEXIS 70175 (E.D.N.Y. Sept. 28, 2006) ....................................... 8

*General Media, Inc. v. Guccione*,
  335 B.R. 66 (S.D.N.Y. 2005) ................................................................................ 15

*Gindi v. Silvershein*,
  1995 U.S. Dist. LEXIS 7785 (S.D.N.Y. June 8, 1995) ............................................ 8

*In re Blech Sec. Litig.*,
  928 F. Supp. 1279 (S.D.N.Y. 1996) ........................................................................ 8

*In re Universal Clearing House Co.*,
  60 B.R. 985 (D. Utah 1986) .................................................................................. 14

*Nisselson v. Softbank AM Corp.*,
  361 B.R. 369 (S.D.N.Y. 2007) ................................................................................ 9

*O'Brien Nat'l Prop. Analyst Partners*,
  936 F.2d 674 (2d Cir. 1991) .................................................................................... 6

*Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*),
  394 B.R. 721 (Bankr. S.D.N.Y. 2008) ..................................................................... 6

*Pergament v. Reisner*,
  357 B.R. 206 (E.D.N.Y. 2006) .............................................................................. 13

*Picard v. Taylor,*
 326 B.R. 505 (S.D.N.Y. 2005) ............................................................................ 1, 9

*Sharp Int'l Corp v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*),
 403 F.3d 43 (2d Cir. 2005) ..................................................................................... 6

*Shields v. Citytrust Bancorp, Inc.*,
 25 F.3d 1124 (2d Cir. 1994) ................................................................................. 14

*Silverman v. K.E.R.U. Realty Corp.*,
 379 B.R. 5 (Bankr. E.D.N.Y. 2007) ................................................................. 8, 14

*SIPC v. Stratton Oakmont, Inc.*,
 234 B.R. 293 (Bankr. S.D.N.Y. 1999) .................................................................. 14

*Thaler v. Adler*,
 372 B.R. 572 (Bankr. E.D.N.Y. 2007) .................................................................... 8

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
 216 F. Supp. 2d 198 (S.D.N.Y. 2002) .................................................................... 6

*United States v. Inslaw, Inc.*,
 932 F. 2d 1467 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992) ................ 15

*United States v. Rylander*,
 460 U.S. 752 (1983) ............................................................................................. 12

## Other Authorities

11 U.S.C. § 548(a)(1)(A) ............................................................................................. 6

11 U.S.C. § 548(a)(1) .................................................................................................. 9

11 U.S.C. § 548(a)(1)(B). ..................................................................................... 12, 13

DCL § 276 ................................................................................................................ 6, 9

DCL §§ 273-275 ........................................................................................................ 12

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 5

Fed. R. Civ. P. 9(b) ................................................................................................ 5, 14

Defendant Robert M. Jaffe respectfully moves under Federal Rules of Civil Procedure 12(b)(6), 8(a) and 9(b) (made applicable to Bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 7012(b), 7008, and 7009, respectively) for dismissal of claims One, Three, Four, Five, Six, Seven, Eight, Ten, and Eleven in the above-captioned adversary proceeding (the "Complaint") filed by Irving Picard ("the Trustee"), the trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or "Madoff").

## PRELIMINARY STATEMENT

Robert Jaffe seeks an order from this Court dismissing the Complaint against him on the grounds that it fails to state a claim upon which relief can be granted. As to Jaffe, the Complaint (1) lacks a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (2) fails to plead fraud with particularity.

The Trustee has sued Cohmad Securities Corporation ("Cohmad") and a number of its officers and employees, including Jaffe. The Complaint accuses defendants of: (1) "participation in and aiding of the massive Ponzi scheme" perpetrated by Madoff, and (2) the "receipt of avoidable transfers [of money] from BLMIS." ¶ 1.

The Trustee has exhaustive records from both Madoff and Cohmad and, in 67-pages of allegations, the Trustee uses these records extensively. He quotes from them (and even reproduces many in the body of the Complaint) to identify alleged fraudulent transfers, fraudulent acts, and facts that he contends create inferences of fraudulent intent.

But in an astonishing pattern, the Complaint repeatedly excludes Jaffe – by name – from factual allegation after factual allegation. And after all these explicit exclusions, little is left about Jaffe other than a handful of conclusions. But conclusions are "not entitled to the assumption of truth" in a motion to dismiss. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1950

(2009). And when only the well-pleaded facts are considered, the Complaint fails to allege: (1) Madoff's fraudulent transfers to Jaffe, (2) the extent of any services Jaffe provided to Madoff, and (3) Jaffe's fraudulent acts or intent.

In sum, the Complaint fails to state a claim upon which relief can be granted, and the claims against Jaffe must be dismissed.

## THE ALLEGED FACTS

The gravamen of the Complaint is that Madoff fraudulently made payments to Jaffe and his co-defendants as fees for "recruiting high-net-worth clients into the Ponzi scheme." ¶ 1. The Complaint alleges that Jaffe "knew or should have known" that Madoff was running a Ponzi scheme, ¶ 24, and that he "participat[ed] and contribut[ed]" to it. ¶¶ 1, 4.

With respect to factual allegations that underpin these legal conclusions, there are only 11 paragraphs in the Complaint that mention Jaffe by name (not counting paragraphs explicitly *excluding* him from conduct by others):

1. Jaffe is a citizen of Florida, a registered agent of Cohmad, and (on information and belief) an owner of Cohmad serving as Vice President. ¶ 12.

2. Jaffe "knew" that the "activities that [he] undertook on behalf of Cohmad were for the benefit of BLMIS." ¶ 22. The Complaint does not allege what those activities were.

3. Jaffe had an account at BLMIS. ¶ 23. The Complaint does not plead how much he invested or withdrew (or when), and it explicitly excludes him from the amounts alleged to be withdrawn by others. ¶ 123(b).

4. "[O]n information and belief," (a) Jaffe "dominated and used [Cohmad] as an instrument . . . to advance . . . personal interests rather than legitimate corporate ends," (b) Jaffe "knew or should have known" that BLMIS activities were "predicated on fraud," and (c) Jaffe "functioned" as an "alter ego[]" of Cohmad. ¶ 24. No facts supporting these conclusions are pleaded with respect to Jaffe.

5. Jaffe was a director or officer of Cohmad. ¶ 49.

6. Jaffe is married to the daughter of an old and close friend of (and investor with) Madoff. ¶ 52.

7. Jaffe worked with two other defendants at a previous place of employment. ¶ 53.

8. Jaffe was a reference for Madoff when Madoff applied to join the Palm Beach Country Club, which the Complaint describes as "key in Jaffe's job of recruiting high-net-worth investors for BLMIS." ¶ 54. The Complaint does not allege how it was Jaffe's "job" to do so or a single instance of what he said, when, where or to whom. Nor does it allege what (or when or how) Jaffe was paid for this "job."

9. Jaffe asserted his rights under the Fifth Amendment not to give evidence against himself in a Massachusetts inquiry when asked about "fees." ¶ 83.

10. Jaffe received employee benefits from Cohmad. ¶ 98.

11. Subpoenas requiring Jaffe's testimony were subject to "delay tactics" in Massachusetts and Jaffe eventually invoked his Constitutional right to not give evidence against himself. ¶ 115.

The Complaint explicitly excludes Jaffe from numerous allegations. That is, the Complaint lays out, in paragraph after paragraph, the fraudulent transfers made to other defendants; it includes tables, reproductions of documents, and appendices listing their fees to the penny. Yet Jaffe is excluded – by name, no less – from each of these. *See, e.g.*, ¶¶ 58, 65, 71, 72, 74, 77, 83, 123(b). The Complaint does not allege a single specific fraudulent transfer to Jaffe.

Similarly, the Complaint describes what the Trustee terms a "net cash" payment regime. According to the Trustee, the very nature of this compensation method put the defendants on actual notice that they were participating in a Ponzi scheme. But, here again, the Complaint excludes Jaffe (again by name) from having received these payments, and does not allege even that he received the reports listing them. S*ee, e.g*., ¶¶ 78, 123(b).

In the same vein, while the Complaint lists other employees' physical proximity to Madoff and their access to the floor in the Lipstick building on which the criminal activity took place, it does not allege that Jaffe had so much as a desk or telephone extension in the building, and affirmatively alleges that "all" employees but a select few (Jaffe *not* being listed among those select few) were barred from the floor that was "cloaked in mystery." *See, e.g*., ¶¶ 102, 103, 105. Indeed, the Complaint puts Jaffe over a thousand miles away in Florida. ¶ 12.

Finally, the Complaint contains two laundry lists of "indicia of irregularity and fraud" about which the defendants are alleged to have "failed to make sufficient inquiry." ¶¶ 123, 124. The first list is based on the defendants' own accounts with Madoff and alleges, in conclusory fashion, implausibly consistent and high returns, fictitious and backdated trading, and Madoff's uncanny ability to buy low and sell high. ¶ 123. Again, Jaffe is explicitly excluded from the allegations asserted against other defendants that they withdrew monies from their accounts. ¶

4

123(b). The list does not provide a single date, time, or description of any of these "indicia," or who was involved. Nor does the Complaint make even one specific averment as to a false or fictitious document.

The second list of "indicia of irregularity and fraud" includes, for example, two magazine and newsletter articles that questioned Madoff's results; that large investment banks such as Goldman Sachs would not deal with Madoff; that Madoff used a small accounting firm to do its books; and that Madoff did not obtain funding from commercial lenders. ¶ 124. The Complaint does not allege that Jaffe was on actual notice of any of these facts, or how, for example, he could possibly have known of the internal deliberations of an investment bank.

## **DISCUSSION**

The Trustee has sued Jaffe under federal and state law contending that he is entitled to the return of fraudulent transfers made by Madoff to Jaffe, asserting both "actual" and "constructive" fraud claims.

To survive a motion to dismiss, the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice if it "tenders naked assertions devoid of further factual enhancement." *Id*. (quotes and brackets omitted). And a complaint must be plausible on its face, that is, it must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In addition, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Among the purposes of Rule 9(b) are "to provide a defendant with fair notice of a plaintiff's claim" and "to safeguard a

5

defendant's reputation from improvident charges of wrongdoing." *O'Brien Nat'l Prop. Analyst Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (quotes omitted)).

Under the standards of both Rule 8 and Rule 9(b), this complaint fails. One cannot tell (1) what Jaffe is alleged to have received, (2) what services he is alleged to have performed or, consequently, (3) whether any services warranted any monies paid. To the extent that the Trustee is alleging that *all* of Jaffe's (unspecified) services were of zero value because they were all fraudulent, the Complaint fails to plead fraud with particularity.

**I.      THE TRUSTEE HAS FAILED TO PLEAD THE ACTUAL FRAUD CLAIMS**

The Trustee has asserted claims under Section 548(a)(I)(A) of the Bankruptcy Code and Section 276 of New York's Debtor & Creditor Law ("DCL"), *see* claims Three and Five, both of which provide for recovery of transfers made by the debtor (Madoff) with actual intent to hinder, delay, or defraud. 11 U.S.C. § 548(a)(1)(A); DCL § 276. These claims must be pleaded with particularity under Rule 9(b). *See Sharp Int'l Corp v. State St. Bank & Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005).

The claim under Section 548(a)(I)(A) fails because the Complaint does not specify any fraudulent transfers to Jaffe. The claim under DCL § 276 additionally fails because it does not plead Jaffe's fraudulent intent with particularity.

**A.      The Trustee Has Failed to Plead Fraudulent Transfers to Jaffe**

"The party asserting an intentional fraudulent transfer claim must 'specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, [and] the consideration paid.'" *Official Comm. of Unsecured Creditors v. JP Morgan Chase Bank, N.A.* (*In re M. Fabrikant & Sons, Inc.*), 394 B.R. 721, 734 (Bankr. S.D.N.Y. 2008), quoting *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); *see also Alnwick v. European Micro Holdings, Inc.*, 281

6

F. Supp. 2d 629, 646 (E.D.N.Y. 2003) (dismissing intentional fraudulent transfer claim for failure to identify the assets transferred; date of the transfer alleged merely as "on or about 2001"). Here, although the Trustee has all of Madoff's and Cohmad's records, the Complaint does not allege a single transfer from Madoff to Jaffe – not how much, when, where, or how.

The Complaint's failure in this respect is highlighted by the allegations made against other defendants. With respect to other defendants, the Complaint provides schedules and charts of payments. For example, paragraph 60 of the Complaint provides a schedule of transfers to Sonny Cohn, calculated to the penny. Similarly, paragraphs 112 and 113 go so far as to reproduce documents showing payments to "Sonja Kohn." And paragraph 77 and Exhibit 3 reproduce reports "detailing" the "commissions" paid to other defendants.

However, as to Jaffe, the Complaint repeatedly *excludes* him from allegations of receiving payments or being listed on Cohmad records as receiving fees or commissions; there is a constant mantra in the Complaint of "other than Jaffe." For example:

- Paragraph 58: "other than . . . Jaffe" (compensation for placing investors' money wired from BLMIS to Cohmad).

- Paragraph 65: "does not include the fees paid to Jaffe" (chart showing compensation paid by BLMIS to Cohmad).

- Paragraph 71: "other than . . . Jaffe" (Cohmad database regarding accounts referred to BLMIS).

- Paragraph 72: "other than Jaffe" (Cohmad records that calculate commissions for introductions).

- Paragraph 74: "other than . . . Jaffe" (Cohmad database showing "true value" of client accounts).

- Paragraph 77: "other than . . . Jaffe" (reports detailing annual commissions).

- Paragraph 83: "none of the documents showing payments . . . include the fees Jaffe was paid" (all Cohmad and BLMIS documents).

7

- Paragraph 123(b): "other than Jaffe" (withdrawals from BMLIS accounts).

Courts routinely find allegations containing more detail than those here insufficient to state an intentional fraudulent transfer claim. *See, e.g., In re M. Fabrikant*, 394 B.R. at 734 (dismissing actual fraud claims under New York law and Section 548(a) alleging "net" transfers in the amount of $ 175.3 million); *Silverman v. K.E.R.U. Realty Corp.*, 379 B.R. 5, 31-32 (Bankr. E.D.N.Y. 2007) (dismissing claim of intentional fraudulent transfer of "millions of dollars" without specifying the source, dates or the amounts of the transfers that the trustee was seeking to recover); *Thaler v. Adler*, 372 B.R. 572, 581 (Bankr. E.D.N.Y. 2007) (dismissing intentional fraudulent transfer claim that did not "allege any specifics as to the amounts or dates" of cash deposits made by a debtor husband into his wife's bank account); *Fannie Mae v. Olympia Mortg. Corp.*, 2006 U.S. Dist. LEXIS 70175, *33-34 (E.D.N.Y. Sept. 28, 2006) (dismissing intentional fraudulent transfer claims aggregating a series of cash transfers made over a three to five year period and failing to identify how many transfers were being challenged or the specific dates or amounts of those transfers); *Alnwick*, 281 F. Supp. 2d at 646; *Gindi v. Silvershein*, 1995 U.S. Dist. LEXIS 7785, *15-17 (S.D.N.Y. June 8, 1995) (dismissing intentional fraudulent transfer claim that alleged a series of non-specific transfers and obligations).

Nor do general allegations about transfers to the defendants as a group suffice. The requirements of Rule 9(b) are not "satisfied by a complaint in which defendants are clumped together in vague allegations." *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996).

Accordingly, the Trustee's claims to void transfers to Jaffe as intentionally fraudulent (claims Three and Five) should be dismissed for failure to properly plead the transfers.

### B. The Trustee Has Failed to Allege Jaffe's Fraudulent Intent

To prevail on the DCL §276 claim, the Complaint must additionally allege the fraudulent intent of the transferee. *See, e.g., Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 373 B.R. 262, 276 (S.D.N.Y. 2007) ("[U]nlike a claim under Bankruptcy Code § 548(a)(1), Velez must plead fraudulent intent of both the transferor and the transferee under § 276"); *see also Nisselson v. Softbank AM Corp.*, 361 B.R. 369, 396 (S.D.N.Y. 2007); *Picard v. Taylor,* 326 B.R. 505, 517 (S.D.N.Y. 2005); *but see Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.*, 396 B.R. 810, 827 (Bankr. S.D.N.Y. 2008). This Complaint fails to do so.

In the 11 paragraphs in which Jaffe is mentioned, there are a number of legal conclusions regarding scienter. But, "because they are no more than conclusions, [they] are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. Thus the allegations that Jaffe "dominated" Cohmad, that he "knew or should have known" of the Ponzi scheme, or that he "functioned" as an alter ego of Cohmad must all be discarded; they are not "supported by factual allegations." *Id*.

When the Court examines the few well-pleaded facts, it will conclude that they certainly do not make out a fraud. Thus, it is not a fraud to be a citizen of Florida, ¶ 12, to be married to the daughter of a friend of Madoff, ¶ 52, to be an officer of Cohmad and receive employee benefits, ¶¶ 12, 49, 98, to have worked with people at a prior employer many years ago, ¶ 53, or to have served as a reference for Madoff when he applied to a country club, ¶ 80.

Indeed, the Trustee has carefully excluded Jaffe from the gut of the allegations on which he bases his claims of fraudulent intent. Specifically, the Complaint sets forth a compensation system that, according to the Trustee, establishes that the defendants knew that Madoff's operation was a Ponzi scheme. He alleges that Cohmad systematically tracked the "true value" of investors' accounts, "i.e. the account balance without reference to the fictitious profits" of investors, ¶ 74, and based compensation on these figures, ¶¶ 75-76. The Trustee concludes that

9

by basing compensation on actual money in and money out, Madoff created a compensation system that was "based on the health and growth of the . . . Ponzi scheme." ¶ 70. He further contends that the allegedly unusual nature of the compensation structure "indicates" that the defendants had "actual knowledge of the Ponzi scheme." ¶ 70. In sum, because "they received commissions based on a net cash rather than some other metric," Cohmad employees "should have known that the business conducted by BLMIS was a Ponzi scheme." ¶ 121.

It may surprise many in the financial industry that, as the Trustee would have it, commissions based only on "new" money are *ipso facto* proof of a Ponzi scheme. But that quibble aside, the Complaint explicitly *excludes* Jaffe from these allegations. Specifically, the Complaint alleges that Cohmad did *not* maintain records of any accounts Jaffe referred to Madoff, ¶ 71, that it did *not* use any customer account information to establish commissions paid to Jaffe, ¶ 71, that the untoward "true value" computer program did *not* calculate any commissions for Jaffe, ¶¶ 72, 74, and that Cohmad did *not* generate reports detailing money to be paid to Jaffe, ¶ 77. Indeed, the Complaint does *not* allege that Jaffe received a copy of the report or had notice in any other way that anyone was paid in this allegedly suspicious manner. ¶ 78.

In the same vein, Jaffe is exempted from other critical allegations concerning knowledge. He is not alleged even to have maintained a desk at Madoff's headquarters at 885 Third Avenue. ¶ 102. And, indeed, the Complaint describes Jaffe as among those barred from the 17th floor of the Madoff operation, the place "where the fraudulent activity . . . occurred." ¶ 103. Specifically, the complaint alleges that the 17th floor was "off-limits to all but a select few employees and family members," employees who are *not* alleged to include Jaffe. ¶ 105.

All that this leaves with respect to Jaffe's intent is the laundry list of items pleaded at paragraphs 123 and 124 of the Complaint. These include, for example: that two magazine and

10

newsletter articles questioned Madoff's results; that large investment banks such as Goldman Sachs would not deal with Madoff; that Madoff used a small accounting firm to do its books; and that Madoff did not obtain funding from commercial lenders. ¶ 124. The Complaint does not allege that Jaffe was on actual notice of any of these facts, and, indeed, it is preposterous that he would have known, for example, of Goldman Sach's internal deliberations. Even the Trustee does not contend that the allegations in paragraph 124 establish Jaffe's actual knowledge that Madoff was running a Ponzi scheme of historic proportion. He contends merely that they are "indicia of irregularity" that should have caused the defendants to "make sufficient inquiry." ¶ 124.

Similarly, the Complaint pleads that the defendants should have known that they were benefiting from a fraud "or, at a minimum, failed to exercise reasonable due diligence" because (1) Madoff achieved implausibly high and consistent rates of return, (2) they should have known that there were fictitious trades in their accounts, and (3) should have noted that Madoff showed an uncanny ability to buy low and sell high. ¶ 123. It similarly pleads that defendants "knew or should have known" that the activity in their accounts "was patently false on its face, and that their purported returns and profits were fictitious." ¶ 45. Again, each of these allegations is a conclusion unsupported by factual allegations, and thus is "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.[1] And although the Trustee has Madoff's and Cohmad's records in his possession, there is not a single who, what, where or when as to any of them, and thus they

---

[1] In addition, perhaps because of the press of time, the allegations simply contain errors. For example, Jaffe's portfolio with BMIS maintained a relatively small number of named stocks; it was primarily a classic buy-and-hold account. When those stocks lost value, so did Jaffe's portfolio; thus, as a factual matter, Jaffe's account did not "consistently" produce high returns. Although the Court cannot consider this as a fact at this procedural stage, it is a pointed demonstration as to why the Court need not, and cannot, accept the Trustee's conclusory allegations.

11

cannot, as a matter of law, form a basis for any inference that Jaffe was acting with fraudulent intent.[2]

## II. THE TRUSTEE'S CONSTRUCTIVE FRAUD CLAIMS FAIL

The Trustee asserts four constructive fraudulent conveyance claims against Jaffe: Claim Four is asserted under Section 548(a)(1)(B) of the Bankruptcy Code, and Claims Six, Seven and Eight are asserted under DCL §§ 273-275. Under Section 548(a)(1)(B) the Complaint must plead that Madoff "received less than a reasonably equivalent value in exchange" for a transfer to Jaffe. Under DCL §§ 273-275, the Complaint must plead that Madoff made transfers to Jaffe "without fair consideration." In other words, under each statute the fundamental analysis is whether what Jaffe did for Madoff was worth less than what he received. *See Balaber-Strauss v. Sixty-Five Brokers* (*In re Churchill Mortg. Inv. Corp.*)*,* 256 B.R. 664, 678 (Bankr. S.D.N.Y. 2000) ("compare what was given with what was received").

The Complaint here fails under Rule 8 pleading standards because it pleads neither what was "given" to Madoff nor what was "received" by Jaffe. *Id*. Moreover, to the extent that the Trustee's theory is that Jaffe provided no consideration because his services to Madoff were entirely fraudulent, the Complaint is additionally fatally flawed because it fails to plead Jaffe's alleged fraud with particularity in violation of Rule 9(b).

---

[2] In a futile effort to make up for any lack of factual allegations, the Complaint does plead that, in a different proceeding, Jaffe invoked his constitutional right not to give evidence against himself. ¶ 83. In the absence of any allegation that Madoff paid Jaffe a fee (and not one such payment is averred), this is not enough to sustain the Complaint. Indeed, "assertion of the Fifth Amendment privilege . . . has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production" *United States v. Rylander*, 460 U.S. 752, 758 (1983). In the same vein, it is unseemly for the Trustee to attempt to impute fraudulent intent to a client from appropriate actions taken by counsel in the course of a representation. And although the Secretary of State of Massachusetts (which has yet to charge Jaffe with wrongdoing) felt aggrieved by the adjournments, they were occasioned by (1) a hospital stay by Jaffe, (2) the appearance of the undersigned as new counsel when a conflict arose with prior counsel, and (3) a constitutional challenge to the extra-state powers of the Massachusetts Secretary of State. None of these are indicia of fraud.

12

*First*, the Trustee has failed to allege, as he must, that any transfer was "less than a reasonably equivalent value in exchange" for Jaffe's services. *See* 11 U.S.C. § 548(a)(1)(B). Indeed, here, the Trustee has failed on two fronts. He has alleged neither (a) the quantity or quality of the services that Jaffe is alleged to have performed for Madoff (what was given), nor (b) the size of any transfer of monies "in exchange" for those services (what was received). "The statutes require an evaluation of the *specific consideration* exchanged by the debtor and the transferee in the *specific transaction* which the trustee seeks to avoid, and if the transfer is equivalent in value, it is not subject to avoidance under the law." *Churchill*, 256 B.R. at 680 (emphasis added).

Here, there is no allegation of "specific" consideration (in either direction) nor of a "specific" transaction. Thus, the Trustee has born his burden of pleading neither that any monies were received nor that they were "less than the reasonably equivalent value" for services rendered. *See* 11 U.S.C. § 548(a)(1)(B). The reference in passing that it was "Jaffe's job" to recruit "high-net-worth investors for BLMIS," ¶ 54, does not meet the requirement; it lacks any detail at all. Put another way, the pleading here is so vague that this Court cannot perform its duty and "compare what was given with what was received." *Churchill*, 256 B.R. at 678; *see also Pergament v. Reisner*, 357 B.R. 206, 210-11 (E.D.N.Y. 2006). Consequently, the pleadings raise no more than "a sheer possibility" that the Trustee is entitled to recovery, and the constructive fraud claims must be dismissed for being deficient under Rule 8. *See Iqbal*, 129 S.Ct. at 1949.

It is of no help to the Complaint that the services were rendered in connection with a Ponzi scheme. It is well-settled law that when one unknowingly brings investors to a Ponzi

scheme that does not "'preclude a determination that the [defendants] gave value.'" *Churchill*, 256 B.R. at 681, quoting *In re Universal Clearing House Co.*, 60 B.R. 985, 999 (D. Utah 1986).

*Second*, the Trustee appears to be contending that any and all services provided by Jaffe are not of "reasonably equivalent value" in exchange for (unpleaded) transfers on the grounds that Jaffe's conduct was wholly fraudulent. The Complaint alleges that "defendants" secured "illegal windfall[s]" that were "based on each victim they introduced and added to the massive fraud." ¶ 4. When the Trustee alleges fraud, he "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).[3] This requires the Trustee to specify the conduct he contends was fraudulent, identify the actor, state where and when the conduct occurred, and explain why the conduct was fraudulent. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). As discussed above, *see* Section I.B, the Complaint does not allege the time, place, date or content of even a single example of fraudulent conduct by Jaffe, nor facts from which fraudulent intent could be inferred. The Trustee has consequently failed to plead that any and all services by Jaffe were fraudulent; he has thus also failed to plead that they were of zero value.

In sum, the Trustee has failed to plead even the most basic facts: what consideration was given in exchange for what transfer, and why it is insufficient. To the extent the Trustee's theory is that all Jaffe's alleged services were insufficient because they were all part of the fraud, that

---

[3] Only Rule 8 pleading requirements are implicated if the pleading is that "the sufficiency of the consideration provided by the transferee" is deficient for some reason other than intentional fraud. *See, e.g., SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999); *Silverman v. H.I.L. Assocs.,* 387 B.R. 365, 404 (Bankr. E.D.N.Y. 2008), citing *Sharp Int'l Corp. v. State St. Bank and Trust Co.*, 281 B.R. 506, 518 (Bankr. E.D.N.Y. 2002), *aff'd* 302 B.R. 760 (E.D.N.Y. 2003), *aff'd* 403 F.3d 43 (2d Cir. 2005). Here, the Complaint fails to meet basic Rule 8 requirements because of a lack of allegations of consideration, transaction or transfer, much less the more stringent requirement imposed when consideration failure is expressly based on fraudulent intent.

claim fails too. Fraudulent acts, conduct, and intent have not been pleaded with the rigor required by Rule 8, much less Rule 9(b).

## III. THE TRUSTEE'S TURNOVER AND ACCOUNTING CLAIM FAILS AS A MATTER OF LAW

In Count One of the Complaint, the Trustee seeks to recharacterize its fraudulent transfer claims as a claim for turnover and accounting under Section 542 of the Bankruptcy Code. This is improper, as "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *United States v. Inslaw, Inc.*, 932 F. 2d 1467, 1472 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992); *see also General Media, Inc. v. Guccione*, 335 B.R. 66, 76 (S.D.N.Y. 2005) (use of § 542 foreclosed where defendant disputed debtor's title to property). The Trustee has failed to plead the existence of an undisputed debt owed to the estate, and indeed, the fact that it has alleged fraudulent transfer claims to recover these same assets demonstrates that there is a dispute as to title. As a result, the Trustee's claim under Section 542 fails as a matter of law.

## IV. THE TRUSTEE'S SUBSEQUENT TRANSFER CLAIM FAILS

The Complaint does not allege that Madoff paid monies to Cohmad that were subsequently transferred to Jaffe. It pleads just the opposite. *See* ¶¶ 58, 65:, 71, 72, 77, and 83. Therefore, claim Ten fails.

## V. THE TRUSTEE'S OBJECTION TO JAFFE'S SIPC CLAIM IS INAPPLICABLE

The Trustee has not alleged that Jaffe filed a SIPC claim. Therefore, claim Eleven fails.

## **CONCLUSION**

The magnitude of the harm done by Madoff's historic Ponzi scheme does not suspend the Federal Rules of Civil Procedure. To the contrary, it is particularly in times of public outcry that defendants depend on the fair and proper application of the rule of law.

Here, the pleadings against Jaffe are fatally thin. No transfer from Madoff to Jaffe is described, and one cannot tell what services Jaffe is alleged to have performed in return. And, as to Jaffe's scienter, in paragraph after paragraph the Complaint excludes him from the facts that are alleged to give rise to an inference of fraudulent intent. Overall, with respect to Jaffe, this Complaint is the epitome of "an unadorned, the-defendant-unlawfully-harmed-me accusation," and is thus deficient. *Iqbal*, 129 S.Ct. at 1949. The Trustee has failed to state a claim upon which relief may be granted, and the claims against Jaffe must be dismissed.

Dated: New York, NY
August 21, 2009

ARKIN KAPLAN RICE LLP

By: */s/ Stanley S. Arkin*
Stanley S. Arkin (# 1373)
Howard J. Kaplan (#4492)
Peter B. Pope (#4626)
David M. Pohl (# 8609)

590 Madison Avenue
New York, NY 10022
(212) 333-0226 Telephone

*Attorneys for Defendant Robert M. Jaffe*