BUTZEL LONG, a professional corporation
Eric B. Fisher
380 Madison Avenue, 22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
fishere@butzel.com

SIEGEL, LIPMAN, DUNAY, SHEPARD & MISKEL, LLP
Kenneth Lipman
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Phone: (561) 368-7700
Fax: (561) 368-9274
klipman@sldsmlaw.com

*Attorneys for Defendants Richard Spring,
The Spring Family Trust, and The Jeanne T. Spring Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL)<br><br>(Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>COHMAD SECURITIES CORPORATION, *et al.*,<br><br>Defendants. | Adv. Pro. No. 09-1305 (BRL) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS FILED BY DEFENDANTS RICHARD SPRING, THE
<u>SPRING FAMILY TRUST AND THE JEANNE T. SPRING TRUST</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

SUMMARY OF ALLEGATIONS IN THE COMPLAINT ............................................. 2

STATUTORY BACKGROUND .............................................................................. 5

ARGUMENT ..................................................................................................... 7

    I.    The Applicable Standard ................................................................. 7

    II.   As To the Spring Defendants, the Intentional Fraud Claims
        Fail To Satisfy the Heightened Pleading Requirements
        Of Fed. R. Civ. P. 9(b) .................................................................... 7

    III.  As To the Spring Defendants, the Trustee Fails To Plead
        Essential Elements Of the Constructive Fraud Claims ....................... 9

CONCLUSION ............................................................................................... 133

# TABLE OF AUTHORITIES

**Cases**                                                           **Pages**

*Alnwick v. European Micro Holdings, Inc.*,
 281 F. Supp.2d 629 (E.D.N.Y. 2003)................................................................ 8

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
 464 F.3d 338 (2d Cir. 2006) .............................................................................. 7

*Andrew Velez Construction, Inc. v. Consolidated Edison Co. of New York*,
 373 B.R. 262 (Bankr. S.D.N.Y. 2007)............................................................... 9

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009)....................................................................................... 7

*Balaber-Strauss v. Sixty-Five Brokers*
 *(In re Churchill Mortgage Investment Corp.)*,
 256 B.R. 664 (Bankr. S.D.N.Y. 2000).......................................................passim

*Balaber-Strauss v. Lawrence*,
 264 B.R. 303 (Bankr. S.D.N.Y. 2001)................................................... 10, 11, 12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................... 7

*Fed. Nat'l Mortgage Ass'n v. Olympia Mortgage Corp.*,
 No. 04 Civ. 4971, 2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) ............ 7, 8, 9

*Gindi v. Silvershein*,
 No. 93 Civ. 8679, 1995 WL 347397 (S.D.N.Y. June 8, 1995) ......................... 8

*Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*,
 310 B.R. 500 (Bankr. S.D.N.Y. 2002)........................................................... 5, 9

*King v. Town of Hempstead*,
 161 F.3d 112 (2d Cir. 1998) ............................................................................ 11

*MarketXT Holdings Corp. v. Softbank AM Corp.*,
 361 B.R. 369 (Bankr. S.D.N.Y. 2007).............................................................. 9

*Official Committee of Unsecured Creditors of M. Fabrikant & Sons, Inc. v.*
 *JPMorgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*,
 394 B.R. 721 (Bankr. S.D.N.Y., 2008)...................................................... 7, 8, 9

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*,
   403 F.3d 43 (2d Cir. 2005) ............................................................................................ 7

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*,
   379 B.R. 5 (Bankr. E.D.N.Y. 2007) ............................................................................... 8

*Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.)*,
   279 B.R. 230 (Bankr. N.D. Ill. 2002) ..................................................................... 11, 12

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506, 122 S. Ct. 992 (2002)) ............................................................................. 9

*United Feature Syndicate, Inc. v. Miller Feature Syndicate, Inc.*,
   216 F. Supp. 2d 198 (S.D.N.Y. 2002)) .......................................................................... 8

*Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*,
   01 Civ. 8871, 2002 WL 1144903 (S.D.N.Y. May 29, 2002) ........................................ 9

## Statutes

Bankruptcy Code § 544(b)(1) ............................................................................................. 5, 6

Bankruptcy Code § 548 .......................................................................................................... 5

Bankruptcy Code § 548(a)(1) ................................................................................................ 5

Bankruptcy Code § 548(c) ..................................................................................................... 6

Bankruptcy Code § 548(a)(1)(B) ........................................................................................... 6

Bankruptcy Code § 547 ........................................................................................................ 10

Bankruptcy Code § 550(a)(2) .............................................................................................. 10

N.Y. Debt. & Cred. §§ 271-276 ............................................................................................. 5

N.Y. Debt. & Cred. § 276 ....................................................................................................... 5

N.Y. Debt. & Cred. § 278 ....................................................................................................... 6

N.Y. Debt. & Cred. § 272 ....................................................................................................... 6

## Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 7

Fed. R. Civ. P. 8(a) ...................................................................................... 2, 9

Fed. R. Civ. P. 9(b) ................................................................................... 2, 7, 9

1.      Richard Spring, the Spring Family Trust and the Jeanne T. Spring Trust (collectively, the "Spring Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint dated June 22, 2009 (the "Complaint"), which was filed by Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS").

## PRELIMINARY STATEMENT

2.      In this action, the Trustee sues twenty eight defendants in an effort to recover the value of alleged fraudulent transfers, fraudulent conveyances and preference payments made during the months and years leading up to the BLMIS SIPA liquidation proceeding. It is clear that the Trustee has cast his net widely in an effort to recover as much money as possible for the estate. The question raised by this motion is whether the Trustee's net has been cast too widely with respect to the Spring Defendants in particular.

3.      The Complaint in this action seeks to recover commission payments made by BLMIS to the Cohmad Securities Corporation ("Cohmad"), its principals and employees, in exchange for their services in recruiting investors for BLMIS. As to certain defendants, the Complaint contains details identifying the specific transfers at issue, as well as facts that, at this early stage of the case, give rise to an inference that those defendants were aware of the Madoff Ponzi scheme. As explained in detail below, however, the Complaint is devoid of any such facts concerning the Spring Defendants.

4.      The Complaint does not identify any single payment made to the Spring Defendants. Thus, there is <u>no</u> information about when any payment was made to any of the Spring Defendants, who made the payment, the amount of the payment, or the consideration exchanged for the payment. Indeed, as to the Spring Family Trust and the

Jeanne T. Spring Trust, the Trustee does not allege receipt of any Cohmad-related payments at any time. These deficiencies are fatal to the Complaint. Because the Complaint contains no facts about the alleged transfers to the Spring Defendants, it does not satisfy the basic notice pleading requirements of Fed. R. Civ. P. 8(a), let alone the more rigorous requirements that apply to the Trustee's intentional fraud claims under Fed. R. Civ. P. 9(b).

5. The constructive fraud claims asserted by the Trustee under both bankruptcy and New York law also fail for a separate, independent reason. With regard to these claims, the Trustee has failed to meet his burden of pleading a lack of "fair consideration" for the transactions. As alleged in the Complaint, Richard Spring was paid a reasonable fee for services he actually performed — raising money for BLMIS. Richard Spring had no reason to know that BLMIS was a fraudulent enterprise, and there is no specific allegation concerning the Spring Defendants to the contrary in the Complaint. Here, as in other cases that have considered the role of brokers and other financial intermediaries in the context of a Ponzi scheme, the Trustee cannot establish a lack of "fair consideration" for the unidentified, challenged transactions. Accordingly, the claims against the Spring Defendants should be dismissed as a matter of law.

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

6. The Trustee alleges that the "primary business" of Cohmad was "directed towards helping BLMIS recruit an ever-expanding list of high-net-worth clients into the BLMIS Ponzi scheme," and that it participated in and aided the "massive Ponzi scheme perpetrated by Bernard L. Madoff." Complaint ¶ 1. The Complaint describes close "familial relationships between Madoff and the "principals of Cohmad" and claims that

2

Cohmad had "unique access to the secretive investment advisory 'business' of BLMIS through which Madoff's fraud was perpetrated." *Id.* ¶ 2. According to the Trustee, Cohmad's "solicitations for BLMIS" accounted for approximately twenty percent of active BLMIS accounts. *Id.* ¶ 3.

7. In exchange for soliciting investments for BLMIS, Cohmad, its principals, and certain employees were paid fees that were calculated based upon a percentage of the investments raised for BLMIS. The Trustee claims that those payments made during the past six years are avoidable under New York's fraudulent conveyance statute, and that those payments made during the past two years are avoidable under various provisions of the Bankruptcy Code. Through this action, the Trustee seeks to "recover all those avoidable transfers and preferences received by the Defendants and return those ill-gotten gains to the victims of Madoff s long-running fraudulent scheme." *Id.* ¶ 4.

8. In total, the Complaint names twenty-eight defendants (the "Defendants"), including Cohmad, its principals, and certain employees of Cohmad. While the Complaint contains numerous allegations about Cohmad and its principals, including Sonny Cohn, Marcia Cohn and Robert Jaffe, the allegations as to the Spring Defendants are minimal.

9. The Trustee alleges that Richard Spring is a Florida citizen, who is a registered agent of Cohmad, *id.* ¶ 19; the Spring Family Trust is a trust established for the benefit of Richard Spring that maintained an account with BLMIS, *id.* ¶ 133; and the Jeanne T. Spring Trust is a trust established for the benefit of Richard Spring's wife that maintained an account with BLMIS, *id.* ¶ 34. Aside from these allegations, which do nothing more than merely identify the Spring Defendants, there are <u>no</u> other allegations specific to them. Thus, for example, the Complaint does not identify any specific transfers

3

to the Spring Defendants or to provide any details about those transfers. There is no allegation that either of the two trusts received Cohmad-related payments at any time. Further, there is no allegation specific to any of the Spring Defendants that would give rise to an inference that any of the Spring Defendants did not act in good faith; nor is there any allegation that the Spring Defendants failed to confer value in exchange for any amounts received. The Complaint does not even allege that the Spring Defendants received any transfers from BLMIS itself; rather, the Complaint seems to imply that the unidentified payments to Richard Spring targeted by the Trustee were paid by Cohmad — not by BLMIS. *Id.* ¶ 58 (according to the Complaint, the Cohmad Representatives, other than Sonny Cohn and Robert Jaffe, were paid by Cohmad).

10. It is evident that the Trustee seeks to paint the Spring Defendants with the same broad brush used for Cohmad and its principals because the Trustee lacks facts that would state a viable claim against the Spring Defendants. With respect to Cohmad and certain of its principals, the Complaint pleads details about the alleged close ties between them. *Id.* ¶ 49-55. As to certain of Cohmad's principals, such as Sonny Cohn, the Complaint contains some detail identifying the transfers in question. *See, e.g., id.* ¶ 60 (containing annual breakdown of payments to Sonny Cohn since 2002). As to the Spring Defendants, however, there is no such detail. Not a single transfer to the Spring Defendants is identified by the Trustee.

11. The Complaint is similarly devoid of facts to suggest that the Spring Defendants had any knowledge of the Madoff fraud. While the Trustee alleges the existence of a database for "monitoring [the] cash value" of certain investments without reference to BLMIS' "fictitious profits," and refers to this database as the Cohmad Cash

4

Database, *id.* ¶ 69, there is no allegation that any of the Spring Defendants had access to this database. Further, unlike certain other defendants, there is no allegation that any of the Spring Defendants had access BLMIS' offices on the 17th or 18th floors of 885 Third Avenue. *Id.* ¶ 102. Finally, the various charts referred to in the Complaint do not mention the Spring Defendants, except to point out that Richard Spring was paid compensation as an employee of Cohmad. *Id.* ¶ 98.

## STATUTORY BACKGROUND

12. New York's Debtor and Creditor Law ("DCL") §§ 271-276, (which is made applicable to these bankruptcy proceedings under Section 544(b)(1) of the Bankruptcy Code), and Section 548 of the Bankruptcy Code authorize a trustee to avoid (a) transactions made with "actual intent to hinder, delay or defraud," as well as (b) transactions that are constructively fraudulent because the debtor did not receive "reasonably equivalent value" (the Bankruptcy Code's term) or "fair consideration" (the DCL's term), in exchange for property transferred while insolvent.

13. With respect to claims based upon intentional fraud by the debtor, under the DCL, a trustee may potentially avoid transactions during the six years preceding the filing of the bankruptcy petition, if the trustee can show "actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." DCL § 276. Similarly, under Section 548(a)(1) of the Bankruptcy Code, a trustee can look back two years to avoid transfers made by a debtor "with actual intent to hinder, delay or defraud" any creditor.[1] A trustee, however, "cannot recover property conveyed to

---

[1] Significantly, the "actual fraudulent intent" required under the DCL must be bilateral; that is, shared by both the transferor and transferee. *See, e.g., Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) (cause of action under DCL § 276 requires allegation of "fraudulent intent on the part of the transferor as well as the transferee").

5

a transferee for value who acted in good faith." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*, 256 B.R. 664, 676 (Bankr. S.D.N.Y. 2000), (explaining Section 548(c) of the Bankruptcy Code). The DCL analog to this Bankruptcy Code concept is found in DCL § 278, which provides that a trustee cannot avoid conveyances made for "fair consideration without knowledge of the fraud" at the time of the conveyance.

14. Even where a debtor is lacking in the requisite intent to establish intentional fraudulent transfer or conveyance, the trustee may state a claim that a payment was "constructively fraudulent" by pleading, among other elements, that the debtor received "less than a reasonably equivalent value in exchange" for the transfer. Bankruptcy Code § 548(a)(1)(B). Similarly, under the DCL, to plead constructive fraud the trustee must allege that the transfer was made without "fair consideration," which is defined in DCL § 272.

15. As courts have explained, the "three terms – 'reasonably equivalent value' in Section 548(a)(1)(B), 'fair consideration' in the [DCL] and 'value' in Section 548(c) – have the same fundamental meaning." *Balaber-Strauss*, 256 B.R. at 677 (citations omitted). The focus of the inquiry as to whether "value" was exchanged is based upon the "specific transaction the trustee seeks to avoid, *i.e.*, the *quid pro quo* exchange between the debtor and transferee." *Id.* at 678. The analysis of whether reasonably equivalent value (or fair consideration or value) was provided is a "commercial equation," requiring the Court to "measure what was given and received" in the specific challenged transaction or transactions. *Id.* at 679.

# ARGUMENT

## I. THE APPLICABLE STANDARD

16. To plead a cause of action under the standard imposed by the Federal Rules of Civil Procedure, "labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Moreover, "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006). Rather, a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1944 (2009). As explained below, the Complaint fails to meet this standard as to the Spring Defendants.

## II. AS TO THE SPRING DEFENDANTS, THE INTENTIONAL FRAUD CLAIMS FAIL TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b)

17. A "claim to avoid an intentional fraudulent conveyance or transfer [under both New York and bankruptcy law] must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Official Committee of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JPMorgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y., 2008) (citing *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)). Rule 9(b) imposes a "heightened pleading requirement," *Fed. Nat'l Mortgage Ass'n v. Olympia Mortgage Corp.*, No. 04 Civ. 4971, 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006), and requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

18. With respect to an intentional fraudulent transfer, among other minimum pleading requirements, the plaintiff must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances [and] the consideration paid." *Id.* (emphasis added) (citing *United Feature Syndicate, Inc. v. Miller Feature Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002)). Courts routinely dismiss as deficient fraudulent transfer claims that fail to identify basic information about the transfers, including identification of the property transferred, the precise date of the transfer and the parties involved in the transfer. *See, e.g., Fabrikant*, 394 B.R. at 733 (dismissing fraudulent transfer claim for failure to identify date of transfers or specific corporate affiliates involved in transfers); *United Feature Syndicate*, 216 F. Supp. at 221(dismissing fraudulent transfer claim for failure to identify transfers with sufficient particularity); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp.2d 629, 646 (E.D.N.Y. 2003) (same).

19. For example, in *Fed. Nat'l Mortgage*, 2006 WL 2802092, at *9, the district court dismissed fraudulent transfer claims because the plaintiff had lumped together a series of cash transfers made over a three to five year period and failed to identify how many transfers were being challenged or the specific dates or amounts of those transfers. *See also Gindi v. Silvershein*, No. 93 Civ. 8679, 1995 WL 347397, at *6 (S.D.N.Y. June 8, 1995) (dismissing fraudulent transfer claim that did not specify transfers challenged by plaintiff); *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 31-32 (Bankr. E.D.N.Y. 2007) (dismissing trustee's claim concerning fraudulent transfer for failure to specify source, dates or amounts transferred).

8

20. Here, as to the Spring Defendants, all of the claims based upon intentional fraud theories must be dismissed because the Complaint fails to specify any of the requisite detail. For example, the Complaint "does not identify how many transfers plaintiff is challenging or the specific dates and amounts of those transfers." *Fed. Nat'l Mortgage Ass'n*, 2006 WL 2802092, at *9. As to the two Spring trusts, the Complaint does not even allege that there were any such transfers at any time. Simply stated, the Trustee has failed to identify "what property was allegedly transferred, when, and to whom." *Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, 01 Civ. 8871, 2002 WL 1144903, at *4 (S.D.N.Y. May 29, 2002) (dismissing claims for fraudulent transfer and fraudulent conveyance). Moreover, the Complaint does not contain any specific allegation that the Spring Defendants acted with fraudulent intent – a prerequisite to pleading a claim under DCL § 276. *See generally Gredd v. Bear Stearns Sec. Corp.*, 310 B.R. at 508; *Andrew Velez Construction, Inc. v. Consolidated Edison Co. of New York*, 373 B.R. 262, 275-76 (Bankr. S.D.N.Y. 2007); *MarketXT Holdings Corp. v. Softbank AM Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007). Accordingly, these claims must be dismissed as a matter of law under Fed. R. Civ. P. 9(b).

### III. AS TO THE SPRING DEFENDANTS, THE TRUSTEE FAILS TO PLEAD ESSENTIAL ELEMENTS OF THE CONSTRUCTIVE FRAUD CLAIMS

21. The claims for constructive fraud, unlike the intentional fraud claims, are not governed by Rule 9(b)'s rigorous requirements. Nonetheless, under Fed. R. Civ. P. 8(a), the Complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Fabrikant*, 394 B.R. at 735 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002)). Further, the Complaint

must, of course, plead the requisite elements to state a claim. Here, the Trustee has failed to do so and the constructive fraud claims should be dismissed.

22. As a threshold matter, as already explained above, the Complaint fails to provide the Spring Defendants with fair notice of the basis for the Trustee's claims.[2] There simply are no facts alleged that would put any of the Spring Defendants on notice as to which transfers the Trustee seeks to avoid.[3]

23. Further, the constructive fraud claims should be dismissed for the independent reason that the Trustee has not, and cannot, allege lack of "fair consideration" or "reasonably equivalent value." Courts in this district have addressed precisely this issue in the context of Ponzi schemes. The bankruptcy court's decision in *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*, 256 B.R. 664 (Bankr. S.D.N.Y. 2000) ("*Churchill I*"), and the district court's affirmance of *Churchill I* in *Balaber-Strauss v. Lawrence*, 01 Civ. 3752 (CLB) (consolidated), 264 B.R. 303 (Bankr. S.D.N.Y. 2001) ("*Churchill II*"), are leading cases on this topic.

24. The *Churchill* decisions involved claims for constructive fraudulent transfer under the Bankruptcy Code and constructive fraudulent conveyance under New York law against brokers who were paid fees for raising investor money for what turned out to be a mortgage-related Ponzi scheme. In suing the brokers who unwittingly played a critical role in keeping the fraudulent scheme going, the *Churchill* trustee contended that

---

[2] The ninety-day preference claims under Section 547 of the Bankruptcy Code fail for the same reason. Quite simply, the Trustee does not identify any transfer to any of the Spring Defendants during the ninety-day preference period.

[3] The Trustee also seeks to recover these unspecified payments under Section 550(a)(2) of the Bankruptcy Code, presumably on the theory that the Spring Defendants are "immediate transferees" of Cohmad. The claim under Section 550(a)(2) is deficient because the Complaint fails to identify any specific, challenged transfers from Cohmad to the Spring Defendants, alleging only generally that Richard Spring was "compensated" by Cohmad.

10

the fees earned "were constructively fraudulent simply because the commissions were paid by an entity engaged in a Ponzi scheme." *Churchill I*, 256 B.R. at 674. The Court rejected this theory of liability, finding that:

> the Brokers in these cases were hired and paid to produce mortgages or investors. <u>They produced and thereby gave value, giving rise to a contractual obligation on the part of Churchill to pay the commissions here at issue.</u> They earned what they were paid fairly and without wrongdoing. On this ground the Trustee's fraudulent conveyance claims to recover commissions from the Brokers must be dismissed as a matter of law.

*Id.* at 680 (emphasis added).[4]

25. In *Churchill II*, the district court affirmed the bankruptcy court's decision dismissing the fraudulent transfer and fraudulent conveyance claims against the brokers. Agreeing with the bankruptcy court's analysis, the district court found that the "Debtors received 'value' in exchange for the commissions paid to the Brokers for performing in good faith a facially lawful and customary service for which they were retained by the Debtors." *Churchill II*, 264 B.R. at 308.

26. Also on point, *Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.)*, 279 B.R. 230 (Bankr. N.D. Ill. 2002), involved fraudulent transfer and fraudulent conveyance claims against a broker who brought investors into what he did not know was a Ponzi scheme. The bankruptcy court followed *Churchill I*, observing that "it would be a legal fiction to say that brokers who produce investors to provide money for a Ponzi

---

[4] The Spring Defendants expect the Trustee to argue in opposition that the Complaint alleges wrongdoing as to the Cohmad Representatives generally, a group that the Complaint defines as including Richard Spring. This argument fails for a number of reasons. As an initial matter, the two Spring trust defendants are not members of the group defined in the Complaint as Cohmad Representatives. Thus, as to them, there are not even generalized allegations of wrongdoing. As to Richard Spring, the generalized guilt-by-association allegations are plainly inadequate to give rise to any inference of wrongdoing. There are no specific allegations that Richard Spring knew, or had access to information that would indicate, that BLMIS was a fraudulent enterprise. This Court should accept as true only the well-pleaded factual allegations in the Complaint. *King v. Town of Hempstead*, 161 F.3d 112, 114 (2d Cir. 1998). As to Richard Spring, there are no such factual allegations suggestive of any wrongdoing or bad faith.

11

scheme are providing nothing of value." *Id.* at 237. As the bankruptcy court explained, by paying commissions to this broker in exchange for the broker's recruitment of investors, the "debtor received adequate consideration, or reasonably equivalent value" equal to a "release of any claims the defendant could have asserted against the estate for unpaid commissions." *Id.* at 239.

27. Here, as in *Churchill* and *Solow*, there is no allegation that the unidentified fees allegedly received by Richard Spring are excessive. As alleged, the fees were calculated as a small percentage of the principal amount of investments that Richard Spring brought to BLMIS. These unidentified fees earned at unspecified times are not rendered constructively fraudulent "solely by reason of the fact that they were paid by entities engaged in a Ponzi scheme." *Churchill I*, 256 B.R. at 675. Because there is no alleged lack of "fair consideration" or lack of "reasonably equivalent value," the claims fail as a matter of law.

## CONCLUSION

28. For the reasons set forth above, the Complaint should be dismissed as to the Spring Defendants, and this Court should grant such other relief as it deems just and proper.

Dated: New York, New York
August 24, 2009

**BUTZEL LONG,**
a professional corporation

By: /s/ Eric B. Fisher
    Eric B. Fisher
380 Madison Avenue
22nd Floor
New York, New York 10017
Telephone: (212) 818-1110
Facsimile: (212) 818-0494
fishere@butzel.com

Siegel, Lipman, Dunay, Shepard & Miskel, LLP
Kenneth Lipman
5355 Town Center Road, Suite 801
Boca Raton, FL 33486
Phone: (561) 368-7700
Fax: (561) 368-9274
klipman@sldsmlaw.com

*Attorneys for Defendants Richard Spring, The Spring Family Trust, and The Jeanne T. Spring Trust*