**VINSON & ELKINS LLP**
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Clifford Thau
Email: cthau@velaw.com
Steven Paradise
Email: sparadise@velaw.com
Joseph F. Kroetsch
Email: jkroetsch@velaw.com

*Attorneys for Defendants*
*Cohmad Securities Corporation,*
*Maurice J. Cohn, Marcia B. Cohn, Milton S. Cohn and Marilyn Cohn*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>            Debtor.<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>            Plaintiff,<br><br>            v.<br><br>COHMAD SECURITIES CORPORATION, MAURICE J. COHN, MARCIA B. COHN, ROBERT JAFFE, ALVIN J. DELAIRE, JR., STANLEY MERVIN BERMAN, JONATHAN GREENBERG, CYRIL JALON, MORTON KURZROK, LINDA SCHOENHEIMER MCCURDY, RICHARD SPRING, ROSALIE BUCCELLATO, MILTON S. COHN, MARILYN COHN, JANE M. DELAIRE A/K/A JANE DELAIRE HACKETT, CAROLE DELAIRE, EDWARD H. KOHLSCHREIBERT, EDWARD H KOHLSCHREIBERSR REV MGT TRUST, GLORIA KURZROK, JOYCE BERMAN, S & J PARTNERSHIP, JANET JAFFIN REVOCABLE TRUST, THE SPRING FAMILY TRUST, JEANNE T. SPRING TRUST, THE ESTATE OF ELENA JALON, THE JOINT TENANCY OF PHYLLIS GUENZBURGER AND FABIAN GUENZBURGER, THE JOINT TENANCY OF ROBERT PINCHOU AND FABIAN GUENZBURGER, ELIZABETH M. MOODY,<br><br>            Defendants. | SIPA LIQUIDATION<br><br>Index No. 08-01789 (BRL)<br><br><br>Adv. Pro. No. 09-01305 (BRL) |

# TABLE OF CONTENTS

DEFENDANTS COHMAD SECURITIES CORPORATION, MAURICE J. COHN, MARCIA B. COHN, MILTON S. COHN and MARILYN COHN's MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS ....................................1

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ......................................................................................................7

    The Parties ........................................................................................................7

    Cohmad's Business ..........................................................................................9

    The Madoff Fraud ..........................................................................................10

ARGUMENT ..........................................................................................................10

I.    THE TRUSTEE MUST ALLEGE NONCONCLUSORY, PLAUSIBLE FACTS TO SURVIVE A MOTION TO DISMISS ........................10

II.    THE TRUSTEE HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT ITS CLAIMS FOR CONSTRUCTIVE FRAUDULENT TRANSFERS ....................................................................11

    A.    The Trustee has not plead facts alleging that BLMIS received less than a reasonably equivalent value in exchange for the fees paid to the Cohmad Defendants ...........................11

    B.    The Complaint does not sufficiently plead facts alleging lack of good faith .....................................................................................14

        1.    The Complaint fails to plead facially plausible facts alleging that the Cohmad Defendants lacked good faith in accepting fees from BLMIS .............................14

        2.    The Complaint's allegations of lack of good faith sound in fraud but fail to satisfy the particularity requirements of Rule 9(b) .............................................17

III.    THE TRUSTEE HAS FAILED TO PLEAD FACTS WITH SUFFICIENT PARTICULARITY TO SUPPORT ITS CLAIMS FOR ACTUAL FRAUDULENT TRANSFERS ....................................19

IV.    THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS SHOULD BE DISMISSED ....................................21

V.    THE TRUSTEE FAILS TO STATE A CLAIM FOR TURNOVER AND ACCOUNTING BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE AND ARE SUBJECT TO DISPUTE ....................................................................................22

VI.    THE TRUSTEE FAILS TO ASSERT AN ALTER EGO CLAIM AGAINST DEFENDANTS MAURICE COHN AND MARCIA COHN ....................................................................................23

VII.    TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE
        FILING OF THE ADVERSARY COMPLAINT ARE NOT
        VOIDABLE ................................................................................................27

VIII.   THE TRUSTEE'S OBJECTION TO THE COHMAD
        DEFENDANTS' SIPA CLAIM FAILS TO PLEAD FACTS AND
        SHOULD BE REJECTED........................................................................29

IX.     THE COMPLAINT DOES NOT PLEAD ANY FACTS
        IMPLICATING DEFENDANTS MARILYN OR MILTON
        COHN ........................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Recovery Trust v. Bank of America, N.A.*,
  624 F. Supp. 2d 292 (S.D.N.Y 2009) ............................................................ 20, 25

*Ashcroft v. Iqbal*,
  -- U.S. --, 129 S. Ct. 1937 (2009) ................................................................ passim

*Avalon LLC v. Coronet Prop. Co.*,
  762 N.Y.S.2d 48 (N.Y. App. Div. 1st Dep't 2003) ........................................... 27

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*,
  256 B.R. 664 (Bankr. S.D.N.Y. 2000) ................................................................. 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 2, 10, 18

*Bobash, Inc. v. Festinger*,
  868 N.Y.S.2d. 747 (N.Y. App. Div. 2d Dep't 2008) .......................................... 29

*Brass v. American Film Technologies, Inc.*,
  987 F.2d 142 (2d Cir. 1993) .............................................................................. 7

*Burtch v. Hydraquip (In re Mushroom Transp. Co.)*,
  227 B.R. 244 (Bankr. E.D. Pa. 1998) .............................................................. 23

*Chick Smith Ford, Inc. v. Ford Motor Credit Co. (In the Matter of Chick Smith Ford, Inc.)*,
  46 B.R. 515 (Bankr. M.D. Fla. 1985) .............................................................. 23

*Devon Mobile Commc'ns Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
  322 B.R. 509 (Bankr. S.D.N.Y. 2005) ......................................................... 25, 26

*East Hampton Union Free School District v. Sandpebble Builders Inc.*,
  No. 2007-08334, 2009 WL 224755 (N.Y. App. Div. 2d Dep't July 28, 2009) ....... 26

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) .............................................................. 24, 25, 26

*Fannie Mae v. Olympia Mortgage Corp.*,
  No. 04 CV 4971, 2006 WL 2802092, 2006 U.S. Dist. LEXIS 70175, (E.D.N.Y Sept. 28, 2006) ...................................................................................................... 20

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
  980 F.2d 125 (2d Cir. 1992) ............................................................................ 22

*Hasset v. Zimmerman (In re O.P.M. Leading Services, Inc.)*,
  32 B.R. 199 (Bankr. S.D.N.Y. 1983) .............................................................. 18

*In re Actrade Fin. Techs. Ltd*,
  337 B.R. 701 (Bankr. S.D.N.Y. 2005) ............................................................ 14

*In re Alper Holdings*,
No. 07-12148, 2008 WL 160203, 2008 Bankr. LEXIS 86 (Bankr. S.D.N.Y.
Jan. 15, 2008)................................................................................................. 24

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005) ........................................................... 24

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir.1991) .......................................................................... 10

*Marlow v. Oakland Gin Co., Inc. (In re The Julien Co.)*,
128 B.R. 987 (Bankr. W.D. Tenn. 1991)....................................................... 23

*Matsumura v. Benihana Nat'l Corp.*,
542 F.Supp.2d. 245 (S.D.N.Y. 2008) ........................................................... 18

*Matter of Morris v. New York State Dep't of Taxation & Fin.*,
82 N.Y.2d 135 (1993)................................................................................... 25

*Murray v. Miner*,
74 F.3d 402 (2d Cir. 1996) ........................................................................... 24

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*,
No. 03 Civ 0613, 2004 WL 112948, *6, 2004 U.S. Dist. LEXIS 780, *18-19 (S.D.N.Y.
Jan. 22, 2004)................................................................................................ 24

*O'Connell v. Shallo (In re Die Flierdermaus LLC)*,
323 B.R. 101 (Bankr. S.D.N.Y. 2005) .......................................................... 26

*Official Committee of Unsecured Creditors of M. Fabrikant & Sons, Inc. v JP Morgan
Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*,
394 B.R. 721 (Bankr. S.D.N.Y. 2008)........................................................... 20

*Quinn v. Teti*,
No. 99-9433, 2000 WL 1616806, *2 n.2, 2000 U.S. App. LEXIS 27210, *7 n.2 (2d
Cir. Oct. 27, 2000) ........................................................................................ 24

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ......................................................................... 18

*Securities and Exchange Commission v. Cohmad Securities Corporation, et al.*,
No. 09 Civ 5680 (S.D.N.Y.) ............................................................................ 1

*Silverman v. Sound Around, Inc. (In re Allou Distrib., Inc.)*,
392 B.R. 24 (Bankr. E.D.N.Y. 2008)...................................................... 27, 29

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
547 F.3d 406 (2d Cir. 2008) ........................................................................... 9

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*,
335 B.R. 539 (D. Del. 2005)......................................................................... 22

*The Armored Group, LLC v. Homeland Sec. Strategies, Inc.*,
No. 07 CV 9694, 2009 WL 1110783, *4, 2009 U.S. Dist. LEXIS 61006, *11
(S.D.N.Y. Apr. 21, 2009)............................................................................... 24

*United Feature Syndicate, Inc. v. Miller Features Syndicate,*
    *216 F. Supp. 2d 198 (S.D.N.Y. 2002)*............................................................... 20

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*
    *933 F.2d 131 (2d Cir. 1991)* ............................................................................. 25

*Wood v. Ghuste (In re Wood),*
    *216 B.R. 1010 (Bankr. M. Fla. 1998)* .............................................................. 23

*Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.,*
    No. 01 Civ 8871 (JCF), 2002 WL 1144903, *4, 2002 U.S. Dist. LEXIS 9615, *11
    (S.D.N.Y. May 29, 2002)..................................................................................... 20

**Statutes**

11 U.S.C. § 542 ..................................................................................................... 22

11 U.S.C. § 544 ............................................................................................... 27, 28

11 U.S.C. § 546 ............................................................................................... 27, 28

11 U.S.C. § 548 ..................................................................................................... 12

11 U.S.C. § 550 ..................................................................................................... 21

15 U.S.C. § 78 ....................................................................................................... 22

**Rules**

Fᴇᴅ. R. Cɪv. P. 10 ................................................................................................................... 7

Fᴇᴅ. R. Cɪv. P. 8 ................................................................................................................. 10

Fed. R. Civ. P. 9 ................................................................................................................. 18

N.Y. CPLR § 213 ......................................................................................................... 27, 28

**DEFENDANTS COHMAD SECURITIES CORPORATION, MAURICE J. COHN, MARCIA B. COHN, MILTON S. COHN AND MARILYN COHN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 8, 9, and 12(b)(6) (as incorporated by Federal Rules of Bankruptcy Procedure 7008, 7009 and 7012), defendants Cohmad Securities Corporation ("Cohmad"), Maurice J. Cohn, Marcia B. Cohn, Milton S. Cohn, and Marilyn Cohn (collectively Cohmad and the Cohns are referred to herein as the "Cohmad Defendants"), respectfully move for the dismissal of Count One, Counts Three through Eight and Counts Ten through Eleven of the Complaint for the reasons that follow.[1]

## PRELIMINARY STATEMENT

The Trustee's Complaint against the Cohmad Defendants is the latest in a string of lawsuits brought and publicized by the Trustee with great fanfare.[2]  In an apparent attempt to maximize headlines, the Trustee glibly tosses around allegations of the Cohmad Defendants' participation in Madoff's unprecedented fraud, going so far as to allege that the Cohmad Defendants "knew" of Madoff's Ponzi Scheme.  Critically, however, the Complaint is long on rhetoric, short on facts.  This Court will search the 195-paragraph Complaint in vain, however,

---

[1] On August 17, 2009, the Cohmad Defendants moved to withdraw the reference of this proceeding to this Court pursuant to 28 U.S.C. § 157(d) as to them on the grounds that this proceeding is substantially similar to an action commenced by the U.S. Securities and Exchange Commission that is pending before the District Court, encaptioned *Securities and Exchange Commission v. Cohmad Securities Corporation, et al.*, No. 09 Civ 5680 (S.D.N.Y.) (LLS). As the Cohmad Defendants have argued in their briefing, requiring the Cohmad Defendants to defend against both actions simultaneously in two different courts is a waste of this Court's time and of the Cohmad Defendants' resources as both this proceeding and the SEC action tell nearly identical tales, make substantially similar allegations and seek the same relief; namely, the disgorgement of alleged "ill-gotten gains" from the Cohmad Defendants.  The consolidation of the two actions will therefore further judicial economy, conserve the parties' resources and minimize the possibility of inconsistent results.

[2] *See, e.g.*, *Picard v. Fairfield Sentry Ltd., et al*, No. 09-01239 (BRL) (Bankr. S.D.N.Y. May 18, 2009); *Picard v. Picower, et al*, No. 09-01197 (BRL) (Bankr. S.D.N.Y. May 12, 2009); *Picard v. Harley Int'l (Cayman) Ltd*., No. 09-01187 (BRL) (Bankr. S.D.N.Y. May 12, 2009); *Picard v. Merkin, et al*, No. 09-01182 (BRL) (Bankr. S.D.N.Y. May 7, 2009); *Picard v. Chais, et al*, No. 09-01172 (BRL) (Bankr. S.D.N.Y. May 1, 2009); *Picard v. Kingate Global Fund, Ltd., et al*, No. 09-01161 (BRL) (Bankr. S.D.N.Y. April 17, 2009); *Picard v. Vizcaya Partners Ltd., et al*, No. 09-01154 (BRL) (Bankr. S.D.N.Y. April 9, 2009).

for a single fact -- as opposed to bald conclusions -- to support these claims. Such empty rhetoric falls short of the pleading standards laid out in Rules 8 and 9(b).

The Trustee's failure to plead facts to support his impermissible leaps of logic requires dismissal of the Complaint under the Supreme Court's recent pronouncements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009). A plaintiff is now required to allege enough facts to state a claim for relief that is plausible on its face. Allegations based on conduct that is consistent with "routine" conduct or "obvious alternative explanations" are insufficient. *Twombly*, 550 U.S. at 566-67. Stripped of its conclusory allegations, the Complaint fails to satisfy even the basic Rule 8 requirement that a claim be plausible on its face. Viewed in light of Rule 9(b)'s much more rigorous requirement that each element of the claims sounding in fraud be pleaded with factual particularity, the Complaint's absence of specific factual allegations -- and its resulting failure to state a claim -- is even more striking.

The Complaint asserts a number of purported claims under various avoidance powers of the Bankruptcy Code. Nominally, these claims are derived from conclusory allegations concerning the Cohmad Defendants' role in introducing high-net-worth clients to Madoff's Ponzi scheme and the Cohmad Defendants' failure to detect supposed red flags the Trustee claims should have alerted the Cohmad Defendants that Madoff's operation was a Ponzi scheme. But as the Trustee's own allegations make clear, Cohmad's involvement in Madoff's scheme was, at most, that of a middleman who, at the request of investors desiring to open accounts with BLMIS, introduced potential investors to BLMIS representatives and received a fee from BLMIS when an investor opened an account. Like the SEC, FINRA and others, the Cohmad

Defendants had no indication that Madoff's operation was a criminal fraud, and the Trustee fails to plead any facts allowing for a plausible contrary inference.

It is not surprising that the Cohmad Defendants and others were not aware of Madoff's fraud. The recent plea allocution by Madoff's chief lieutenant, Frank DiPascali, along with the criminal Information filed by the Department of Justice and the lawsuit filed by the U.S. Securities and Exchange Commission ("SEC") against DiPascali, reveal the extreme lengths to which Madoff and DiPascali went to ensure that their criminal fraud would not be discovered. In his Complaint in the present action, the Trustee pleads no facts, as opposed to impermissible legal conclusions, from which it could be logically inferred that Madoff and DiPascali informed the Cohmad Defendants of their crimes, that the Cohmad Defendants knew of their crimes, or that the Cohmad Defendants purposefully furthered the criminal fraud. In other words, the Trustee fails to plead facts showing that the Cohmad Defendants were any different from the legions of others who were fooled by Madoff's criminal behavior, and instead alleges liability under a misguided theory of "guilt by association."

When viewed as a whole, the Complaint fails to plead facts giving rise to a plausible claim that the payments to the Cohmad Defendants should be avoided as fraudulent transfers or subject to turnover. The Trustee's allegations that the Cohmad Defendants had knowledge of Madoff's criminal fraud are entirely conclusory, which are not entitled to a presumption of truth and therefore do nothing to support the Trustee's claims. Moreover, the purported red flags the Complaint identifies are consistent with common business practices and therefore fail to establish that the Cohmad Defendants were reckless participants in Madoff's criminal scheme or its concealment.

The Complaint raises several claims for fraudulent transfers, all of which fail to state a claim and therefore must be dismissed.  First, the claims of constructive fraudulent transfers (Count Four and Counts Six through Eight) fail because the Trustee has not pleaded facts that show that BLMIS received less than reasonably equivalent value in exchange for the fees paid to the Cohmad Defendants.  Instead, the Trustee offers only a rote recitation of the legal conclusion that BLMIS did not receive fair consideration, which is insufficient to support the Trustee's claim. The bare suggestion that the Cohmad Defendants' services were without value because BLMIS was secretly operating a Ponzi scheme is insufficient to save the Trustee's claim since this Court has ruled that a broker's service provided in good faith can constitute fair consideration for finders' fees, even when the investment fund turns out to be a Ponzi scheme. *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*, 256 B.R. 664, 680-82 (Bankr. S.D.N.Y. 2000).

Second, the fraudulent conveyance claims under the New York Debtor and Creditor Law ("DCL") (Counts Six through Eight) fail for the additional and independent reason that the Trustee has failed to plead facts demonstrating that the Cohmad Defendants acted in bad faith as recipients of the allegedly fraudulent transfers.  The Trustee relies upon the physical proximity of offices and the existence of friendships to suggest that the Cohmad Defendants somehow "must have known" of a criminal fraudulent scheme that the SEC and numerous other regulators in the country failed to detect for decades.  The Trustee even purports to find proof of the Cohmad Defendants' alleged knowledge of BLMIS's fraud in the fact that the Cohmad Defendants were compensated only for funds invested with BLMIS by the individuals whom they introduced and not for so-called investment profits, even though this type of compensation arrangement is not unusual in the investment management business.

Apart from its inherent implausibility, the Complaint also fails to satisfy the heightened pleading standard of Rule 9(b), which is fatal to the Trustee's claims of actual fraudulent transfers. This Rule requires that the circumstances constituting alleged fraud be stated with factual particularity, thereby serving as a safeguard against improvident charges of wrongdoing that can cause irreparable harm to a defendant's reputation. Here, as to defendants Marcia, Milton and Marilyn Cohn, the Complaint fails to offer any specific facts concerning the allegedly fraudulent transfers, fails to state how many transfers the Trustee is challenging and fails to identify either the specific dates or amounts of those transfers. Similarly, as to all of the Cohmad Defendants, the Trustee's allegations of lack of good faith necessary to constructive fraudulent transfer claims under New York law sound in fraud, but fail to satisfy the particularity requirements of Rule 9(b).

Seeking to build upon his flawed claims for fraudulent transfers, the Trustee asserts a vague and unsubstantiated claim (Count Ten) to avoid subsequent transfers. This claim fails to identify a single subsequent transfer and fails for all of the same reasons as the Trustee's initial fraudulent transfer claims.

The claim for turnover and accounting (Count One) likewise should be dismissed because the subjects of the claim are not property of the estate and are subject to dispute. Since the Trustee has asserted fraudulent transfer claims against the very subjects of the turnover and accounting claim, he is well aware that the ownership of this property is disputed. The transfers sought to be recovered under the turnover and accounting claim have been, as the term suggests, "transferred" and may only be recovered, if it all, through the Trustee's legally flawed fraudulent transfer claims described above.

The Trustee also makes a specious allegation "upon information and belief" that Cohmad was the alter ego of defendants Sonny Cohn and Marcia Cohn. This allegation is devoid of any supporting facts. It is instead an example of the "shotgun approach" to pleading, with the Trustee alleging a wide array of alleged acts of purported malfeasance with the hope that something might hit its target. But the alleged malfeasance is supported by nothing more than conclusory assertions, which are insufficient to state a claim.

Equally as conclusory in nature is the Trustee's objection to the Cohmad Defendants' SIPA claims (Count Eleven). The Trustee pleads essentially no facts in support of his claim, instead simply stating the legal conclusion that the Cohmad Defendants' SIPA claims lack support. To the extent that the Trustee's vague allegations intend to assert that the Cohmad Defendants' SIPA claims should be based on the actual value of the Cohmad Defendants' investment accounts with BLIMS rather than the account value reflected in customer statements, the claim fails as a matter of law. The Trustee's attempts to offset the Cohmad Defendants' SIPA claims against allegedly fraudulent transfers fail for all of the reasons that the individual fraudulent transfer claims fail, as stated above.

Finally, all claims against defendants Marilyn Cohn and Milton Cohn should be dismissed because the Trustee does not allege that either defendant received transfers subject to the claims set out in the Complaint. While none of the claims against the Cohmad Defendants state a claim based upon factual allegations, the Trustee does not even appear to try to implicate defendants Marilyn and Milton Cohn in any of the conclusory and implausible allegations presented.

In sum, the Complaint consists of an amalgamation of conclusory statements and implausible inferences with which the Trustee seeks to place a sinister twist on the Cohmad

6

Defendants' conduct.  But, like many others, the Cohmad Defendants were deceived and taken advantage of by Madoff for his own criminal ends, and the fact that they were compensated by Madoff for introducing investors does not establish that they committed or were aware of Madoff's criminal fraud.  If the Trustee's Complaint succeeds in anything, it is in detailing the depths to which the Cohmad defendants were betrayed by Madoff.  The allegations pleaded in the Complaint do not support the extraordinary inference that the Cohmad Defendants knowingly placed their livelihoods and their savings in the hands of an enterprise they knew to be a fraud.  It is not enough for the Trustee to rely upon the aura of suspicion surrounding Madoff to impute upon his victimized business associates a culpability as to which no plausible facts have been alleged.

## **BACKGROUND**[3]

### **The Parties**

Maurice Cohn has more than a fifty-year unblemished record in the securities industry.[4] (*See* Paradise Decl. Ex. A.)  From approximately 1963 through 1985, Mr. Cohn was a named partner in the New York Stock Exchange member firm and American Stock Exchange specialist firm that became Cohn, Delaire & Kaufman ("CDK").  (*Id.*; Compl. ¶ 50.)    In or about 1983, Mr. Cohn sold his interest in CDK to a British investment banking firm (*see* Paradise Decl. Ex.

---

[3] This section is derived from the allegations in the Complaint, which the Cohmad Defendants accept as true for the purpose of this motion only, as well as documents incorporated in the Complaint by reference.  Where a complaint relies upon documents central to its claim, those documents are considered part of the pleadings.  FED. R. CIV. P. 10(c) (made applicable to this proceeding by Federal Rule of Bankruptcy 7010; *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

[4] Mr. Cohn has one reported incident on his industry registration form, dating back to 1964.  Mr. Cohn was sanctioned by the NYSE because his firm hired another NYSE member firm's employee, without the other firm's prior consent.  (*See* Exhibit A to Declaration of Steven Paradise in Support of Motion to Dismiss ("Paradise Decl.").)

A), and approximately two years later, Mr. Cohn left that firm to form Cohmad Securities Corporation ("Cohmad"), a broker dealer registered with the SEC and the National Association of Securities Dealers ("NASD"). (Compl. at ¶¶ 9, 43.) Prior to the instant matter, in its nearly twenty-five year history, Cohmad has never been the subject of any regulatory proceeding.

Marcia Cohn, who is Maurice Cohn's daughter, joined Cohmad in 1988 and is a minority shareholder. (*Id*. ¶ 11.) Marcia Cohn is a registered representative and principal of Cohmad. (*Id*.) Prior to joining Cohmad, Ms. Cohn was a registered representative with Cowen & Co., where she first became registered in 1982. (*Id*. ¶ 53.) Like her father, Ms. Cohn has an unblemished record in the securities industry. (*See* Paradise Decl. Ex. B.)

Marilyn Cohn, who is Maurice Cohn's wife, is not affiliated with Cohmad. (Compl. ¶ 25.) Milton Cohn, who is Maurice Cohn's brother, owns one percent of Cohmad, but has never been employed there. (*Id*. ¶ 21.) In addition, Maurice Cohn, Marcia Cohn, Marilyn Cohn and Milton Cohn each maintained accounts with BLMIS, which, like thousands of other investors, were totally lost on December 11, 2008 as a result of Madoff's fraud. (Compl. ¶¶ 23, 25.)

Bernard Madoff ("Madoff"), who was a neighbor and longtime friend of Maurice Cohn (*id*. ¶¶ 43, 124), was the founder and sole shareholder of BLMIS, a FINRA-member firm that Madoff started in or about 1960. (*Id*. ¶ 40.) Since 1985, Cohmad's regulatory filings with FINRA and the SEC have fully disclosed that Madoff was a minority shareholder and control person of Cohmad. (*See, e.g.,* Paradise Decl. Ex. C.) During the time that Maurice Cohn and Marcia Cohn knew Madoff and up until December 11, 2008, Madoff was a prominent figure in the securities industry having served as Chairman of the Board of Directors of the NASDAQ stock market and, among other things, sat on SEC advisory committees and led Securities

Industry Association panels.  (*See* Paradise Decl. Ex. D.[5])  Madoff was often quoted in periodicals and other industry publications, such as *The Wall Street Journal* and *The New York Times* as an expert on trading, securities and compliance issues.  (*See id.* Exs. E - G.)  Madoff also was highly respected among his peers in the securities industry.  (*See id.* Exs. H, I.)

Since 1985, Cohmad subleased on a fully disclosed basis space and facilities from BLMIS.  (Compl. ¶ 100; *see, e.g.*, Paradise Decl. Ex. C.)  This arrangement began while the firms were located at 110 Wall Street and continued after they moved to 885 Third Avenue.  (*See* Compl. ¶ 40; Paradise Decl. Ex. C.)

**Cohmad's Business**

Cohmad's retail stock brokerage business involves purchasing and selling securities for its own customers' accounts.  (Compl. ¶ 9.)  In addition, Cohmad received finder's fees from BLMIS for introducing to BLMIS individuals who asked to invest with BLMIS (*id.* ¶ 122), and was also paid for lay-off trades that BLMIS's market making operations made through Cohmad. (*See, e.g.,* Paradise Decl. Ex. C.)  At no time did Cohmad attempt to cover up the fact that it received such payments.

As the Trustee acknowledges, investing with Madoff was a highly desirable opportunity that numerous investors were eager to pursue.  Indeed, many of BLMIS's investors "felt privileged to be allowed to invest with Madoff and BLMIS."  (Compl. ¶56.)  Although the Trustee alleges that Cohmad "introduced" investors to BLMIS (*id.* ¶ 4) and "steer[ed] customers to BLMIS" (*id.* ¶ 3), the Complaint offers no specifics to support these conclusions.  To the

---

[5] The Court may take judicial notice of the information in press articles without converting the motion into a motion for summary judgment.  *See, e.g., Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (judicial notice is appropriate "of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents").

contrary, the Complaint makes clear that Madoff was so admired and respected that potential investors sought out opportunities to invest with him.  (*See Id.* ¶ 56.)

### **The Madoff Fraud**

Along with the rest of the world, the Cohns learned for the first time on December 11, 2008 that Madoff had been operating a giant Ponzi scheme.  (Compl. ¶ 41.)  Madoff has consistently maintained that he acted alone.  *United States v. Bernard L. Madoff*, No. 09 Cr. 213 (S.D.N.Y.) (DC).  Only two other parties, BLMIS's auditor David Friehling ("Friehling") and BLMIS chief financial officer Frank DiPascali ("DiPascali"), have been accused criminally.  Whereas Friehling was not charged with having knowledge of the fraud (*see* Paradise Decl. Ex. J[6]), DiPascali has admitted to an elaborate and extensive concealment of the Ponzi scheme from everyone (*see id.* Ex. K).  Indeed, as the United States Attorney's Office asserts in the criminal information against DiPascali (*see id.* Ex. L), and as the Commission itself pleads in its complaint against DiPascali (*see id.* Ex. M), DiPascali and Madoff succeeded in concealing the Ponzi scheme from everyone, including regulators, for almost two decades.[7]

### **ARGUMENT**

### I.     **THE TRUSTEE MUST ALLEGE NONCONCLUSORY, PLAUSIBLE FACTS TO SURVIVE A MOTION TO DISMISS**

To survive a motion to dismiss under Rule 12(b)(6), the Trustee's Complaint must contain sufficient factual detail to "state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570 (interpreting FED. R. CIV. P. 8(a), made applicable here by Federal Rule of

---

[6] "[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings."  *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991).

[7] (See Paradise Decl. Ex. M at p. 3) ("From at least the early 1980s through on or about December 11, 2008 . . . FRANK DIPASCALI, JR. . . . perpetrated a scheme to defraud the IA Clients by . . . disseminating false and fraudulent documents to IA Clients purporting to show that their funds have been invested, and lying to the SEC and an accounting firm to conceal the fraudulent scheme.").

Bankruptcy 7008). The Supreme Court has made clear that "a plaintiff armed with nothing more than conclusions" does not satisfy the pleading requirements of the Federal Rules of Civil Procedure and courts need not consider allegations that are mere legal conclusions because "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 129 S. Ct. at 1949. It is insufficient for a complaint to do nothing more than show that a claim for relief is "possible" or "conceivable," and such a complaint should be dismissed. *Id.* at 1950-51. A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal citations omitted). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id*. at 1940. Allegations consistent with "routine market conduct" or an "obvious alternative explanation" do not give rise to a plausible inference of misconduct. *See Twombly*, 550 U.S. at 566-67.

## II. THE TRUSTEE HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT ITS CLAIMS FOR CONSTRUCTIVE FRAUDULENT TRANSFERS

The Trustee's Complaint fails to state a claim for constructive fraudulent transfers under the Bankruptcy Code or the DCL because it fails to aver facts showing that BLMIS received less than a reasonably equivalent value in exchange for the transfers at issue. The claims under the DCL also should be dismissed because the Trustee has failed to plead facts demonstrating that the Cohmad Defendants acted in bad faith as recipients of the allegedly fraudulent transfers.

### A. The Trustee has not plead facts alleging that BLMIS received less than a reasonably equivalent value in exchange for the fees paid to the Cohmad Defendants

To state a claim for constructive fraudulent transfers under the Bankruptcy Code or the DCL, the plaintiff must plead facts which show that the debtor "received less than a reasonably

equivalent value in exchange for such transfer or obligation" and that the debtor was insolvent or would become so as a result of the transfer. 11 U.S.C. § 548(a)(1)(B). Likewise, under the DCL, all of the Trustee's constructive fraudulent transfer claims require that the allegation of facts demonstrate that the conveyance was made with a lack of "fair consideration" as well as a showing of insolvency or circumstances leading to insolvency. DCL §§ 273-75.[8] The Trustee fails to plead such facts, instead offering only the conclusory and legally insufficient statement that "BLMIS received less than a reasonably equivalent value in exchange for each of the Two Year Transfers" (Compl. ¶ 57) and "BLMIS did not receive fair consideration for the portion of the Six Year Transfers" (id. ¶ 59). These allegations are only "threadbare recitals of the elements of a cause of action" and thus "do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The determination of equivalent or fair value is firmly focused on "the specific transaction the trustee seeks to avoid … rather than an analysis of the transaction's overall value to a debtor as it relates to the welfare of the debtor's business." *Churchill*, 256 B.R. at 678. Thus, the Trustee is required to plead facts which would show that the fees BLMIS paid to the Cohmad Defendants were not fair consideration for the services the Cohmad Defendants provided to BLMIS. The Trustee has not pleaded any such facts. The Complaint discusses only the transfers' purported role in BLMIS's Ponzi scheme, alleging no facts showing that, putting aside BLMIS's fraud in its underlying investment business, there was anything inequitable about an investment firm such as BLMIS paying "finders' fees" to Cohmad. *See id* at 680-82 (holding that commissions paid by an investment firm to brokers were equitable).

---

[8] "Although the terminology used by the D & CL differs from that used in the Bankruptcy Code, both ultimately require a trustee to establish that the debtor did not receive 'reasonably equivalent value' or 'fair consideration' in the transaction." *Churchill*, 256 B.R. at 677. These terms "have the same fundamental meaning." *Id.*

Allegations that Cohmad's services did not provide value because it later turned out that BLMIS was operating a Ponzi scheme are legally insufficient to support a claim for constructive fraudulent transfer. *See id.* at 675, 682. In *Churchill*, the trustee sought to avoid as fraudulent transfers the transactions in which brokers were paid for their services in referring investors to Churchill's Ponzi scheme. *Id.* at 666. The trustee argued that Churchill operated as a Ponzi scheme, thus depriving the brokers' services of value as a matter of law because these services had the effect of perpetuating the Ponzi scheme. *Id.* at 680. The court rejected this theory, holding:

> The Trustee's theory ignores the actual transaction between Debtor and Broker and the undisputed equivalence in value between the commissions and the Broker's services, and instead focuses on *collateral conduct of the Debtors' management (the overall operation of the Ponzi scheme), which is extraneous to any particular transaction between Debtor and Broker.* [Emphasis added.] To say that either a Mortgage Broker transaction or an Investment Broker transaction conferred no value on the Debtors is fiction insofar as the particular transaction itself is concerned. Fraudulent conveyance law, under both state and federal statutes, is concerned with the reality of whether the transferee conferred equivalent value on the debtor *in the transaction sought to be avoided*. [Emphasis in original.] The fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render actually or constructively fraudulent a particular transaction which in and of itself is not fraudulent in any respect.

*Id.* at 681. Similarly, regardless of whether BLMIS was operating a Ponzi scheme, the Trustee is required to plead facts showing that the Cohmad Defendants did not confer equivalent value on BLMIS in exchange for the finders' fees that the Trustee seeks to avoid as fraudulent conveyances. The Trustee has failed to plead such facts here and the claim should be dismissed.[9]

---

[9] Although *Churchill* notes that the trustee in that case had not alleged any facts showing that the brokers had any knowledge of the Ponzi scheme, the Trustee's Complaint against Cohmad alleges no facts (other than implausible speculation) which would tend to show that Cohmad had any knowledge of BLMIS's Ponzi scheme either. *See infra* at § II.B.1.

**B.  The Complaint does not sufficiently plead facts alleging lack of good faith**

The Trustee has failed to state a claim for constructive fraudulent transfer under the DCL for the additional and independent reason that the Complaint fails to plead sufficient facts alleging that the Cohmad Defendants lacked good faith in accepting broker fees from BLMIS. *See In re Actrade Fin. Techs. Ltd*, 337 B.R. 701, 802 (Bankr. S.D.N.Y. 2005).

**1.  The Complaint fails to plead facially plausible facts alleging that the Cohmad Defendants lacked good faith in accepting fees from BLMIS**

Under New York law, the Trustee must plead facts sufficient to allege that the Cohmad Defendants did not act in good faith in accepting broker fees from BLMIS. *In re Actrade*, 337 B.R. at 802 ("the party seeking to have the transfer set aside has the burden of proof on the element of fair consideration and, since it is essential to a finding of fair consideration, good faith"); *see* DCL § 272. While the Complaint is replete with bald assertions of fraud, it does not allege facts that suggest anything more than the possibility that the Cohmad Defendants lacked good faith by knowingly participating in BLMIS's Ponzi scheme. [10]  *See Iqbal*, 129 S. Ct. at 1949.

On the issue of the Cohmad Defendants' good faith, the Complaint falls short in several ways.  The Complaint includes a number of conclusory statements alleging that the Cohmad Defendants knew or should have known of BLMIS's fraudulent actions. (*E.g.*, Compl. ¶¶ 30, 39, 48, 120, 123.)  These "naked assertions" of knowledge or complicity in BLMIS's fraudulent actions do not suffice to survive a motion to dismiss under Rule 12(b)(6) because "the Federal

---

[10] Although the Trustee's allegations of fact must be taken as true on this partial motion to dismiss, it is important to set the record straight on several matters.  First, Cohmad fully and accurately disclosed to the SEC and FINRA:  (a) that it had a significant business relationship with BLMIS; (b) that it subleased space from BLMIS, for which it paid rent; (c) that Madoff was a control person of Cohmad; and (d) the correct amount of the fees it was paid by BLMIS. (*See, e.g.*, Paradise Decl. Ex. C.)  Second, the high rates of return were also known to the approximately 13,500 investors who invested with Madoff.  (*See* Paradise Decl. Ex. O.)  Third, Cohmad fully disclosed the amount of revenues it received in fees from a third party broker-dealer in the footnotes to its annual audited financial statements that it reported to the SEC.  (*See, e.g.*, Paradise Decl. Ex. C.)

Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1949, 1954 (internal quotations omitted).

In the rare instance where facts are presented at all, they fall short of *Iqbal's* "facial plausibility" standard as none "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. The Trustee alleges that the Cohmad Defendants maintained close personal relationships with Madoff (Compl. ¶¶ 2, 49-55), and that the Cohmad Defendants' offices were in close proximity to those of BLMIS (id. ¶¶ 2, 100-106). These allegations do not "permit the court to infer more than the mere possibility of misconduct," and thus fail to meet the facial plausibility standard. *Iqbal*, 129 S. Ct. at 1949-50. Physical proximity to the site of a masterfully concealed financial fraud does not permit the reasonable inference of actual or constructive knowledge of the fraud. Indeed, the SEC, which had unfettered access to BLMIS's books and records, failed to discover fraud in the five audits of BLMIS undertaken as part of the SEC's audit and inspection program. (*See* Paradise Decl. Ex. N.) It is also an implausible inference to assume that because a Cohmad employee had key-card access to BLMIS's investment advisory floor, the Cohmad Defendants were aware of BLMIS's carefully concealed fraud. (Compl. ¶¶ 103-05.) There is nothing in the Complaint to suggest that Madoff perpetrated his fraud "in plain sight," such that mere access to BLMIS's investment advisory floor meant exposure to the fraud. Indeed, to the contrary, DiPascali has admitted that he and Madoff went to great efforts to conceal any indications of their wrongdoing. (*See* Paradise Decl. Ex. M at p. 3). Moreover, the Trustee's allegations with regard to such key-card access are untethered from any allegations of wrongdoing. *See id.* Similarly, allegations that BLMIS performed certain office services for Cohmad, such as administering benefits, do not plausibly suggest that the Cohmad Defendants knew of BLMIS's Ponzi scheme. (*See* Compl. ¶¶

95-99.)  Allegations such as these "stop[] short of the line between possibility and plausibility." *Iqbal*, 129 S. Ct. at 1949.[11]

The Trustee would have the Court impute to the Cohmad Defendants' trust in Madoff and BLMIS a secret knowledge of BLMIS's fraud, yet the Complaint pleads no facts to support such an inference.  The Complaint's allegations that the Cohmad Defendants personally entrusted their own money to BLMIS cannot sensibly lead to the inference that they were aware of the Ponzi scheme and would in fact tend to suggest the precise opposite.  (*See* Compl. ¶¶ 116-119.) Allegations that Cohmad publicly touted its association with the widely-respected Madoff and claimed to understand BLMIS's investment strategy demonstrate only that Cohmad was fooled along with the rest of the world when it came to BLMIS's financial fraud.  (*See id*. ¶¶ 84-95.)  To plead such facts as alleging knowledge of BLMIS's fraud is to presuppose such knowledge.

Equally as implausible are the Complaint's allegations that the Cohmad Defendants must have known of  BLMIS's Ponzi scheme because they had access to certain public information -- public information that failed to inform the rest of the world of this fraud.  Specifically, the Trustee alleges that BLMIS's rate of return was implausibly high and that several published articles questioned the authenticity of BLMIS's financial success.  (Compl. ¶¶ 3, 123, 124.) Given that countless numbers of investors (*see* Paradise Decl. Ex. O), a European accounting firm (*see* Paradise Decl. Ex. L at ¶ 20-29) and the SEC (*see id.*) -- on multiple occasions -- were not informed of BLMIS's carefully concealed fraud by this same information, these allegations

---

[11] The Trustee takes a very broad view of what constitutes "indicia of irregularity and fraud."  (*See* Compl. ¶ 124.) For example, he alleges that the decision by certain large, multinational banks not to do business with BLMIS somehow put the Cohmad Defendants on notice of BLMIS's Ponzi Scheme.  (*See id.*)  The Trustee does not allege, however, that the Cohmad Defendants were aware of such decisions by these banks, nor does he plead facts to support his implication that any company not doing business with Goldman Sachs or Morgan Stanley must necessarily be engaged in a Ponzi scheme.  The Trustee also suggests that because Madoff listed Maurice Cohn as a reference on his country club application, Mr. Cohn must have been aware of Madoff's fraudulent behavior.  (*See* Compl. ¶ 54.)  It is clear from allegations such as these that the Trustee's rhetoric is not backed up by factual pleading.

fail to "nudge[] [the Trustee's] claims ... across the line from conceivable to plausible." *See Iqbal*, 129 S. Ct. at 1951. It is not enough to state that BLMIS's results were too good to be true, making discovery of the Ponzi scheme obvious, when the fraud went unexposed for decades. Unfortunately, there was nothing obvious about BLMIS's scheme. Moreover, Madoff's returns were not implausibly high. For example, the Court may take judicial notice that Madoff's "implausibly high" return rate actually underperformed NASDAQ annual returns during three years in the relevant period: 1991 (56.84%), 1999 (85.59%), and 2003 (50.01%). *See* http://www.1stock1.com/1stock1_140.htm.

Lastly, the Complaint attempts to impute suspicious motives on the understandable manner in which Cohmad employees were compensated for the services performed for BLMIS. The Trustee alleges that Cohmad's commissions for bringing investments into BLMIS were calculated without regard to fictitious profits, which is to say that the commissions were based solely on the amounts directly attributable to Cohmad's efforts. (*See* Compl. ¶¶ 69-83, 121.) From this, the Complaint makes an inferential leap of logic, concluding that the profits were fictitious and therefore that Madoff was running a Ponzi scheme. But a far more reasonable and plausible inference is that Madoff did not pay commissions on gains because those gains supposedly resulted from his investing acumen. At bottom, allegations that Cohmad was not paid a fee based on profits Madoff generated do not reasonably permit the inference that Cohmad somehow knew that such profits were fictitious. Accordingly, the claim for constructive fraudulent transfers should be dismissed.

### 2. The Complaint's allegations of lack of good faith sound in fraud but fail to satisfy the particularity requirements of Rule 9(b)

The Complaint fails to allege properly lack of good faith for the further reason that it does not satisfy Rule 9(b)'s rigorous pleading standard for allegations of fraud. To the extent that the

allegations made in the Complaint may be construed to allege a lack of good faith, they rely upon unsubstantiated allegations that the Cohmad Defendants engaged in fraudulent conduct. (*See, e.g.*, Compl. ¶¶ 48, 75, 82, 105.)  Rule 9(b) applies to "all averments of fraud".  Fed. R. Civ. P. 9(b).  "This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *see also Matsumura v. Benihana Nat'l Corp.*, 542 F.Supp.2d. 245, 251 (S.D.N.Y. 2008) ("courts in the Second Circuit have applied Rule 9(b) to … individual claims that, as pleaded, are predicated on allegations of fraud").  As a consequence, because the Trustee's allegations of lack of good faith sound in fraud, they must be pleaded with particularity in accordance with the requirements of Rule 9(b).  *See Hasset v. Zimmerman (In re O.P.M. Leading Services, Inc.)*, 32 B.R. 199, 200 (Bankr. S.D.N.Y. 1983) (Lifland, J.) (dismissing claim of constructive fraudulent transfers because allegations of bad faith alleged fraud and failed to satisfy Rule 9(b)).  The Complaint's conclusory allegations that the Cohmad Defendants knew of or were complicit in BLMIS's fraudulent scheme fall far short of meeting this rigorous standard of pleading.  *See id.*

The reasons stated above for why the Trustee's allegations of bad faith fail to satisfy the less stringent pleading requirements of Rule 8 as interpreted by the Supreme Court in *Iqbal* and *Twombly* argue with even greater force that these allegations do not meet Rule 9(b)'s heightened pleading standard, and are incorporated herein.  Furthermore, the Trustee's allegations of bad faith are made almost entirely "upon information and belief," which is *per se* insufficient to satisfy the requirements of Rule 9(b) particularity.  *O.P.M.*, 32 B.R. at 204 ("The case law generally holds that allegations of fraud based solely on information and belief usually do not

satisfy the degree of particularity required by Rule 9(b).").  Allegations upon "information and belief" permeate the Complaint, as for example:

- ¶ 48:  "The connections between Cohmad and BLMIS were so pervasive that they acted in many respects as interconnected arms of the same enterprise.  As such, *upon information and belief*, at all relevant times hereto, Cohmad and the Cohmad Representatives were aware of the BLMIS Ponzi scheme."

- ¶ 75:  "In general, customer accounts at a legitimate brokerage would not maintain active accounts with negative net equity, net equity being the amount of deposits minus the amount of withdrawals in the brokerage account.  *Upon information and belief*, because the Cohmad Representatives were privy to the Cohmad Cash Database showing negative account balances, the Cohmad Representatives knew or should have known that BLMIS IA business was a fraud."

- ¶ 82:  "*Upon information and belief*, the Cohmad Cash Database, the Payment Schedules, and the commissions actually paid, demonstrate clearly that the Cohmad Representatives were aware of the fictitious profit status of the BLMIS customer accounts that they referred to BLMIS."

- ¶ 105:  "In short, the 17th Floor was cloaked in mystery, and, *upon information and belief*, Madoff kept the 17th Floor off-limits to all but a select few employees and family members – a select group that included Marcia Cohn."

(Compl. ¶¶ 48, 75, 82, 105 (emphasis added); *see also, e.g.*, *id.* ¶¶ 22, 24, 56.)  Therefore under Rule 9(b)'s particularity requirements, the Trustee's allegations made upon information and belief are rendered irrelevant.  *See O.P.M.*, 32 B.R. at 204.  What remains after filtering through the numerous allegations made upon information and belief are conclusory allegations unsubstantiated by pleadings of fact, which are insufficient to withstand the heightened standard of pleading mandated by Rule 9(b).  *See supra* at § II.B.1.

### III.  THE TRUSTEE HAS FAILED TO PLEAD FACTS WITH SUFFICIENT PARTICULARITY TO SUPPORT ITS CLAIMS FOR ACTUAL FRAUDULENT TRANSFERS

The Trustee's generalized allegations of actual fraudulent transfers also fail to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and, like the constructive fraudulent transfer claims, should therefore be dismissed.  Under Rule 9(b), the

party asserting an actual fraudulent transfer claim must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, and the consideration paid." *Official Committee of Unsecured Creditors of M. Fabrikant & Sons, Inc. v JP Morgan Chase Bank, N.A. (In re Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008); *see also Fannie Mae v. Olympia Mortgage Corp.*, No. 04 CV 4971, 2006 WL 2802092, *9, 2006 U.S. Dist. LEXIS 70175, **31-32 (E.D.N.Y Sept. 28, 2006). Thus, "allegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state a fraudulent transfer claim." *Fabrikant*, 394 B.R. at 733. *See also*, *Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 292 (S.D.N.Y 2009).

The Complaint's allegations of actual fraudulent transfers to Marcia, Milton and Marilyn Cohn fall short of Rule 9(b)'s requirements, aggregating together broad categories of transfers without setting out for each category of transfers, let alone for each individual transfer, any particularized details regarding timing or consideration paid. (*See, e.g.*, Compl. ¶¶ 125-132.) These allegations fail to satisfy Rule 9(b)'s heightened pleading requirements because they "do[] not identify how many transfers plaintiff is challenging or the specific dates and amounts of those transfers", and instead "aggregate[] the transfers into lump sums over [several] year time periods". *Fannie Mae*, 2006 WL 282092, at **9-10, 2006 U.S. Dist. LEXIS 70175, at **33-34. The Trustee's failure to specifically identify for each transfer to Marcia, Milton and Marilyn Cohn "the property that was allegedly conveyed, the timing and frequency of [the] allegedly fraudulent conveyances" and "the consideration paid" is fatal to these claims of actual fraudulent transfers. *See United Feature Syndicate, Inc. v. Miller Features Syndicate*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002); *Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, No. 01 Civ 8871

(JCF), 2002 WL 1144903, *4, 2002 U.S. Dist. LEXIS 9615, *11 (S.D.N.Y. May 29, 2002) (Rule 9(b) requires that an actual fraudulent transfer claim plead "what property was allegedly transferred, when, and to whom"). Accordingly, the Trustee's claims for actual fraudulent transfers to Marcia, Milton and Marilyn Cohn should be dismissed.

## IV. THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS SHOULD BE DISMISSED

In addition to the actual and fraudulent transfer claims asserted directly against the Cohmad Defendants, the Trustee also seeks to avoid subsequent transfers, despite having failed to identify a single transfer. Under § 550(a) of the Bankruptcy Code, any property recovered by the trustee pursuant to the fraudulent conveyance statutes may be recovered from the initial transferee or from any immediate or mediate transferee.[12] *See* 11 U.S.C. § 550(a). For all of the reasons stated above, the Trustee has failed to state a claim for fraudulent conveyance under any applicable statutes, therefore his attempt to avoid subsequent transfers must necessarily fail. *See supra* at §§ II, III. Furthermore, the Trustee does not identify any subsequent transfers that he seeks to avoid, instead averring "upon information and belief" that some or all of the transfers were subsequently transferred to others in the form of payment of commission fees. (Compl. ¶ 188.) This allegation merely states a legal conclusion that the Trustee hopes is true, absent any

---

[12] Specifically, 11 U.S.C. § 550 (a) says:

§ 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

  (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

  (2) any immediate or mediate transferee of such initial transferee.

pleadings of fact sufficient to satisfy Rules 8 or 9(b)'s pleading standards. *See O.P.M.*, 32 B.R. at 202 (a trustee may recover property from a subsequent transferee only to the extent that the initial transfer has been avoided under other provisions of the Bankruptcy Code). Accordingly, the Trustee's claim to avoid subsequent transfers should be dismissed.

## V. THE TRUSTEE FAILS TO STATE A CLAIM FOR TURNOVER AND ACCOUNTING BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE AND ARE SUBJECT TO DISPUTE

The Trustee's cause of action for turnover and accounting under 11 U.S.C. § 542 fails to state a claim as a matter of law because fraudulently transferred property, where ownership is subject to dispute, is not property of the estate until it has been recovered through a successful avoidance action. *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992); *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del. 2005). Indeed, it strains logic to assert that "transfers," which have been transferred out of the debtor's estate and are the subject of an avoidance action, are the present property of the debtor's estate and properly subject to a claim for turnover and accounting.

To state a claim for turnover and accounting under § 542, the property subject to the claim must be "property of the estate." *See* 11 U.S.C. § 542. To this end, Count One of the Trustee's Complaint alleges that the "Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3)". (Compl. ¶ 136.) As a matter of law, however, property that has been fraudulently conveyed is not property of the estate. *See In re Colonial*, 980 F.2d at 131. Thus, it is improper for the Trustee to attempt to use a turnover action to recover the same property that is the subject of a fraudulent conveyance claim. *See Stanziale*, 335 B.R. at 554. Indeed, a claim for turnover of any property the ownership of which is in dispute is flawed and must be

dismissed under Rule 12(b)(6). *See id.* ("[t]urnover actions cannot be used to demand assets whose title is in dispute"); *Marlow v. Oakland Gin Co., Inc. (In re The Julien Co.)*, 128 B.R. 987, 993 (Bankr. W.D. Tenn. 1991) ("turnover is not intended as a remedy to determine the disputed rights of parties to property"); *Chick Smith Ford, Inc. v. Ford Motor Credit Co. (In the Matter of Chick Smith Ford, Inc.)*, 46 B.R. 515, 518 (Bankr. M.D. Fla. 1985) ("There is no doubt that Congress enacting § 542 contemplated a turnover to the estate of properties primarily tangible properties and monies which were due to the estate without dispute which are fully matured and payable on demand.").

The payments identified in the Complaint as the subject of the claim for turnover and accounting are not "property of the estate" under § 541 for the further independent reason that they are not traceable to a specific fund from which recovery is sought. *Burtch v. Hydraquip (In re Mushroom Transp. Co.)*, 227 B.R. 244, 253 (Bankr. E.D. Pa. 1998) (to demonstrate a valid statutory claim under turnover or improper transfer, the plaintiff must trace the proceeds of funds stolen from the consolidated estate to the defendants); *Wood v. Ghuste (In re Wood)*, 216 B.R. 1010, 1012-13 (Bankr. M. Fla. 1998) (no right of turnover because there was no specific fund in which the debtor could claim a property interest). The Complaint fails to trace the transfers to a specific fund from which they could be recovered, therefore the Trustee's claims for turnover and accounting must also be dismissed for this independent reason.

## VI. THE TRUSTEE FAILS TO ASSERT AN ALTER EGO CLAIM AGAINST DEFENDANTS MAURICE COHN AND MARCIA COHN

The Trustee's conclusory allegation that Cohmad was the alter ego of defendants Maurice and Marcia Cohn must be dismissed because the Trustee fails to allege any facts to support this claim. The Trustee's naked assertions of wrongdoing appear in the Complaint without any context or supporting factual allegations, based on nothing but the apparent desire to broaden the

Cohmad Defendants' liability. (*See* Compl. ¶ 24.) A "naked assertion[] devoid of further factual enhancement" cannot survive a motion to dismiss. *See Iqbal*, 129 S. Ct. 1949 (internal quotations omitted).

New York courts look to the state of incorporation when analyzing an alter ego claim. *Quinn v. Teti*, No. 99-9433, 2000 WL 1616806, *2 n.2, 2000 U.S. App. LEXIS 27210, *7 n.2 (2d Cir. Oct. 27, 2000); *see also In re Alper Holdings*, No. 07-12148, 2008 WL 160203, at *5 n.7, 2008 Bankr. LEXIS 86, *18 n.7 (Bankr. S.D.N.Y. Jan. 15, 2008) (Lifland, J.), *aff'd*, 398 B.R. 736 (S.D.N.Y. 2008). Cohmad was formed and operates under New York law, so New York law applies to the alter ego analysis. Under New York law, an alter ego claim must undergo the same analysis as a claim seeking to pierce the corporate veil. *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 291 n.74 (S.D.N.Y. 2005) ("The phrases 'piercing the corporate veil' and 'alter ego liability' generally are used interchangeably for purposes of New York law"); *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, No. 03 Civ 0613, 2004 WL 112948, *6, 2004 U.S. Dist. LEXIS 780, *18-19 (S.D.N.Y. Jan. 22, 2004).

However phrased, courts are reluctant to apply what is "a narrow exception to the doctrine of limited liability for corporate entities," and thus "courts should permit veil-piercing only under 'extraordinary circumstances.'" *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511-12 (S.D.N.Y. 2005) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). Thus, to pierce the corporate veil, "a plaintiff bears the heavy burden of 'showing that (1) the owners exercised complete domination of the corporation in respect to the transaction []; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'" *The Armored Group, LLC v. Homeland Sec. Strategies, Inc.*, No. 07 CV 9694, 2009 WL 1110783, *4, 2009 U.S. Dist. LEXIS 61006, *11 (S.D.N.Y. Apr. 21,

2009) (quoting *Matter of Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993)).  To determine whether the defendant has exercised domination and control over a corporate entity, courts have considered the following factors:  (1) absence of formalities of corporate existence, such as issuance of stock, election of directors, and keeping of corporate records; (2) inadequate capitalization; and (3) use of corporate funds for personal purposes. *Devon Mobile Commc'ns Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 322 B.R. 509, 522 (Bankr. S.D.N.Y. 2005) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).

Because the veil-piercing claim is based on allegations of fraud, it also is subject to the particularity requirements of Rule 9(b).  *EED Holdings*, 228 F.R.D. at 512 (dismissing veil-piercing claim for failure to satisfy particularity requirements of Rule 9(b)).  Because the Trustee's allegations are all alleged "upon information and belief," they *per se* fail to satisfy the requirements of Rule 9(b).  *See O.P.M.*, 32 B.R. at 204.  To the extent that the Complaint includes an alter-ego allegation not based "upon information and belief", it is based on a legal conclusion and therefore equally insufficient.

Thus, the Trustee's alter ego claim alleges that:  (1) Cohmad has been dominated and used as the instrument of Maurice Cohn and Marcia Cohn; (2) Maurice Cohn and Marcia Cohn "exercised complete domination and control of Cohmad in dealing with BLMIS, whose activities they knew or should have known were predicated on fraud"; and (3) Maurice Cohn and Marcia Cohn "functioned as alter egos of Cohmad."  (Compl. ¶ 24.)  These allegations are insufficient because they constitute nothing more than mere legal conclusions that are "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 129 S. Ct. at 1949.  The Trustee fails to allege any facts that would support the legal conclusion that the Cohns "exercised complete domination and

25

control of Cohmad." The Complaint alleges no facts showing that Cohmad lacked the formalities of corporate existence, was inadequately capitalized, or was used by the Cohns for personal purposes. *See O'Connell v. Shallo (In re Die Flierdermaus LLC)*, 323 B.R. 101, 107 (Bankr. S.D.N.Y. 2005) (dismissing veil-piercing claim where the complaint was "entirely lacking in the detailed allegations that are necessary in order to state a claim for piercing the corporate veil."). Nor does the Trustee allege how any purported domination of Cohmad by the Cohns has resulted in any harm to the plaintiff. *EED Holdings*, 228 F.R.D. at 513 (dismissing veil piercing claim because plaintiff failed to connect defendant's domination of corporation with harm sustained by plaintiff).

Even Plaintiff's legal conclusions fail sufficiently to plead an alter ego claim. The allegation that the Cohns "exercised complete domination and control of Cohmad in dealing with BLMIS" (Compl. ¶ 24), is only sufficient to show that Maurice Cohn, Cohmad's CEO, and Marcia Cohn, Cohmad's President, managed the affairs of Cohmad, including dealing with BLMIS. *See Devon Mobile*, 322 B.R. at 522 ("merely showing that an individual officer or director was charged with 'managerial responsibility with respect to operation of the business of the Partnership' … will not be sufficient to pierce the corporate veil."); *see also East Hampton Union Free School District v. Sandpebble Builders Inc.*, No. 2007-08334, 2009 WL 224755, *4 (N.Y. App. Div. 2d Dep't July 28, 2009) ([I]f, standing alone, domination over corporate conduct in a particular transaction were sufficient to support the imposition of personal liability on the corporate owner, virtually every cause of action brought against a corporation either wholly or principally owned by an individual who conducts corporate affairs could also be asserted against that owner personally, rendering the principle of limited liability largely illusory.").

Because the Trustee has failed to allege any element of an alter ego claim, the court should dismiss any claims seeking to hold the Cohns liable for any transfers made by BLMIS to Cohmad.

## VII.   TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE FILING OF THE ADVERSARY COMPLAINT ARE NOT VOIDABLE

The Trustee seeks in Counts Five through Eight of the Complaint to extend New York's six-year statute of limitations for avoiding fraudulent transfers by an additional seven months by calculating the limitations period backwards from the date of BLMIS's bankruptcy filing rather than from the date of the filing of the adversary complaint. This interpretation is contrary to the plain language of the applicable statutes and would improperly permit the Trustee to assert claims that the creditors -- in whose shoes the Trustee stands -- could not themselves assert. *See Silverman v. Sound Around, Inc. (In re Allou Distrib., Inc.)*, 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008).

When the Trustee brings a claim for fraudulent transfers under § 544(b) of the Bankruptcy Code, he is limited to avoiding any transfer "that is voidable under applicable law by a creditor holding an unsecured claim."   11 U.S.C. § 544(b).   New York law applies to the Trustee's claims, and New York law limits fraudulent transfer claims to a six-year statute of limitations set forth in N.Y. CPLR § 213.   For both actual and constructive fraudulent transfer claims, the timeliness of the claim is determined as of the commencement of the action challenging the transfer.   *See Avalon LLC v. Coronet Prop. Co.*, 762 N.Y.S.2d 48,49 (N.Y. App. Div. 1st Dep't 2003) (applying a six-year lookback from the commencement of the avoidance action alleging fraudulent transfers).

The limitations period imposed by New York law is further restricted by § 546(a) of the Bankruptcy Code, entitled "Limitations on avoiding powers," which provides that, so long as the

27

case has not been closed or dismissed, an action under § 544 may not be commenced after the later of two years after the entry of the order for relief or one year after the appointment or election of the first trustee, provided such appointment or election occurs before the expiration of the aforementioned two-year period.  11 U.S.C. § 546(a).[13]  This statute only purports to further limit an action brought under § 544; it includes no language that purports to toll or otherwise extend or replace the limitations period provided by the "applicable law" referenced by § 544 (*i.e.*, New York's statute of limitations).  Thus, according to the plain language of the statute under which the Trustee's avoidance claims are brought (11 U.S.C. § 544(b)), as limited by the applicable New York statute of limitations (N.Y. C.P.L.R. § 213), and as further limited by the Bankruptcy Code (11 US.C. § 546(a)), the six-year statute of limitations applicable to Counts Five through Eight of the Complaint runs from the date the Trustee filed the adversary complaint against the Cohmad Defendants.

To calculate the statute of limitations period from any time other than the filing date of the adversary proceeding would put the Trustee in a different position than that of an actual unsecured creditor, for whom the limitations period would undoubtedly run from the time that a

---

[13] In full, 11 U.S.C. § 546(a) provides:

§ 546.  Limitations on avoiding powers

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

complaint alleging fraudulent transfers was filed.  *See Bobash, Inc. v. Festinger*, 868 N.Y.S.2d. 747, 749-50 (N.Y. App. Div. 2d Dep't 2008) (dismissing creditor's fraudulent conveyance claim as time-barred because the action was brought more than six years after the fraudulent conveyance allegedly occurred).  Such a result would run contrary to the framework established by the Bankruptcy Code, under which "the trustee 'stands in the shoes of the creditor, subject to any defense that could have been asserted against that creditor'," including statutes of limitations.  *See Silverman*, 392 B.R. at 31 (quoting COLLIER ON BANKRUPTCY ¶ 544.09[3] (15th ed. rev. 2007).  Given the plain meaning of the relevant statutes and that the Trustee stands in the shoes of a creditor, any transfers made more than six years before the filing date of the adversary action against the Cohmad Defendants are not voidable, and the claims should be dismissed to the extent they exceed this period.  *See id.*

## VIII.  THE TRUSTEE'S OBJECTION TO THE COHMAD DEFENDANTS' SIPA CLAIM FAILS TO PLEAD FACTS AND SHOULD BE REJECTED

The Trustee's objection to the Cohmad Defendants' SIPA claim fails to plead any facts other than a rote recitation of the elements and must therefore be rejected.  *See Iqbal*, 129 S. Ct. at 1949.  Count Eleven of the Complaint states that "Defendants' claim … is not supported by the books and records of BLMIS nor the claim materials submitted by Defendants, and, therefore, should be disallowed." (Compl. ¶ 193.)  The allegation that the Cohmad Defendants' claim is not supported by BLMIS's books and records is entirely unsubstantiated and conclusory. *See Iqbal*, 129 S. Ct. at 1949.

Count Eleven of the Complaint includes the additional allegation that the Cohmad Defendants' SIPA claim "also should not be allowed as a general unsecured claim." (Compl. ¶ 194.)  This is purportedly because the Cohmad Defendants are alleged recipients of fraudulent transfers from BLMIS.  *Id.*  This claim relies entirely upon the Trustee's allegations of actual

fraudulent transfers, constructive fraudulent transfers and subsequent transfers, and therefore like those claims, fails for the reasons stated above. *See supra* at §§ II, III, IV.

## IX. THE COMPLAINT DOES NOT PLEAD ANY FACTS IMPLICATING DEFENDANTS MARILYN OR MILTON COHN

All claims against defendants Marilyn Cohn and Milton Cohn should be dismissed because the Trustee does not allege that either defendant received transfers subject to the claims set out in the Complaint. (*See* Compl. ¶¶ 21, 25.) The Trustee alleges that Marilyn and Milton Cohn both maintained accounts at BLMIS, but this does not distinguish them from the numerous other victims of BLMIS's fraud and is an insufficient basis upon which to assert the claims against them. (*See id*.) It is further alleged that Milton Cohn is a one percent owner of Cohmad and serves as a principal (Compl. ¶ 21), but he is not implicated in the Trustee's alter ego claim (*id* ¶ 24), nor does the Complaint allege that he received any payments subject to the Trustee's claims. Marilyn and Milton Cohn, Maurice Cohn's wife and brother, respectively, have not had any plausible claims asserted against them and should not be forced to defend utterly unsubstantiated legal claims based solely on their relation to Maurice Cohn.

## <u>CONCLUSION</u>

For the foregoing reasons, Count One, Counts Three through Eight and Counts Ten through Eleven of the Trustee's Complaint should be dismissed as against the Cohmad Defendants.

Dated: New York, New York
       August 24, 2009

Respectfully,

VINSON & ELKINS LLP

By:    s/ Steven Paradise    
    Clifford Thau
    Steven Paradise
    Joseph F. Kroetsch
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000
*cthau@velaw.com*
*sparadise@velaw.com*
*jkroetsch@velaw.com*

*Attorneys for Defendants Cohmad
Securities Corporation, Maurice J. Cohn,
Marcia B. Cohn, Milton S. Cohn, and
Marilyn Cohn.*