**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------X

In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Debtor.

----------------------------------------------------------X

IRVING H. PICARD, as Trustee for the
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                    Plaintiff,

      v.

COHMAD SECURITIES CORPORATION,
ETC., and THE JOINT TENANCIES OF
PHYLLIS GUENZBURGER AND FABIAN
GUENZBURGER and ROBERT PINCHOU
AND FABIAN GUENZBURGER,

                    Defendants.

----------------------------------------------------------X

FOR PUBLICATION

SIPA LIQUIDATION
No. 08-01789 (BRL)

(Substantively Consolidated)

Adv. Pro. No. 09-1305 (BRL)

APPEARANCES**:**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
By:    David J. Sheehan
        John Moscow
        Marc E. Hirschfield
        Oren J. Warshavsky
        Seanna R. Brown

*Attorneys for Plaintiff, Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

HOFFINGER STERN & ROSS LLP
150 East 58th Street – Floor 19
New York, NY 10155
Telephone: (212) 421-4000
Facsimile: (212) 223-3857
By:    Jack S. Hoffinger
       Fran Hoffinger

*Attorneys for Defendants the Joint Tenancy of Phyllis Guenzburger*
*and Fabian Guenzburger and the Joint Tenancy of*
*Robert Pinchou and Fabian Guenzburger*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

# MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Before this Court is the motion ("Motion to Dismiss") of the Joint Tenancy of Phyllis Guenzburger and Fabian Guenzburger and the Joint Tenancy of Robert Pinchou and Fabian Guenzburger (collectively, "Defendants" or "Joint Tenancy Defendants," and individually, "Guenzburger Tenancy" and "Pinchou Tenancy," respectively) seeking to dismiss the complaint ("Complaint") of Irving H. Picard, Esq., ("Trustee" or "Plaintiff") trustee for the substantively consolidated Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff. Defendants move to dismiss the Complaint for insufficient service of process and lack of personal jurisdiction pursuant to Rules 12(b)(2), (5), (6) and 12(e) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure. Defendants assert that the Complaint should be dismissed because 1) the Complaint fails to establish personal jurisdiction over the Defendants; and 2) service by mail from New York to Switzerland was insufficient under Rules 4(f)(1) and 4(f)(2)(C) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7004 of the Federal Rules of Bankruptcy Procedure.

For the reasons set forth below, the Defendants' Motion to Dismiss is denied without prejudice to Defendants' right to renew the motion on the ground of insufficient service of process if the Trustee fails to effect proper service upon Defendants within a reasonable time.

**BACKGROUND**

**I. Events Preceding the Complaint**

The Trustee initiated this adversary proceeding in connection with the infamous Ponzi scheme perpetrated by Bernard L. Madoff through his investment company, BLMIS. On December 11, 2008, Madoff was arrested by federal agents and charged with securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 in the United States District Court for the Southern District of New York ("District Court"). *United States v. Madoff*, No. 08-MJ-02735. That same day, the Securities and Exchange Commission ("SEC") filed a civil complaint in the District Court alleging, *inter alia*, that Madoff and BLMIS were operating a Ponzi scheme through BLMIS's investment advisor activities ("Civil Action"). *S.E.C. v. Madoff, et al.,* No. 08-CV-10791.

On December 15, 2008, the Securities Investor Protection Corporation ("SIPC") filed an application in the Civil Action seeking a decree that the customers of BLMIS are in need of the protections afforded under SIPA. The District Court granted SIPC's application and entered an order on December 15, 2008, placing BLMIS's customers under the protections of SIPA ("Protective Order"). The Protective Order appointed Plaintiff as trustee for the liquidation of the business of BLMIS and removed the SIPA liquidation proceeding to this Court pursuant to SIPA sections 78eee(b)(3) and (b)(4), respectively.

On March 12, 2009, Madoff pled guilty to an 11-count criminal indictment and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *United*

3

*States v. Madoff*, No. 09 CR 213 (DC), Docket No. 57, Plea Hr'g Tr. at 23:14-17. On June 29, 2009, Madoff was sentenced to 150 years in prison.

## II.     The Trustee's Complaint

The Complaint, filed on June 22, 2009, proceeds against Cohmad Securities Corporation ("Cohmad") and various affiliated individuals and entities, seeking turnover and accounting, avoidance of preferential and fraudulent transfers, and damages pursuant to sections 542, 544, 547(b), 548(a)(1)(A) and (B), 550 and 551 of the Bankruptcy Code and sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law. The Complaint alleges, *inter alia*, that Cohmad, a New York corporation founded in 1985 by Madoff and friend Sonny Cohn, participated in the fraudulent scheme by recruiting clients for, and diverting billions of dollars to, BLMIS. Collectively, the named defendants are alleged to have profited in the amount of several hundred million dollars at the expense of the defrauded victims of the BLMIS Ponzi scheme.

The Complaint alleges that each of the Joint Tenancy Defendants maintained an account with BLMIS in New York and directed transfers to and from these accounts to the detriment of BLMIS victims. Additionally, the Guenzburger Tenancy allegedly maintained an account with Cohmad, and the Pinchou Tenancy directed defendant Sonny Cohn, co-founder of Cohmad, to maintain its BLMIS files. Neither of the moving Defendants has filed a claim in the underlying liquidation. The Complaint lists the Guenzburger Joint Tenancy as having an address at Amsel Strasse 18, Basel 4059, Switzerland, and the Pinchou Joint Tenancy as having an address at Dornacherstrasse 16, 4147 Aesch, Switzerland. The Trustee attempted service by mailing process to the two Swiss addresses through regular mail, care of the United States Postal Service, on June 25, 2009. Actual receipt of service by this mail method has not been denied.

## DISCUSSION

**I.      Rule 12(b)(2) of the Federal Rules of Civil Procedure–Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff need only make a *prima facie* showing "through its own affidavits and supporting materials" that personal jurisdiction exists. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Where, as here, a foreign defendant has not consented to jurisdiction by filing a proof of claim in the bankruptcy case, the plaintiff must show that "the foreign defendant has the requisite minimum contacts with the United States at large" to satisfy Fifth Amendment due process.[1] In addition to a "minimum contacts" inquiry, the court conducts a "reasonableness" inquiry to determine that its exercise of jurisdiction will not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd., v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). In deciding the issue, the court must construe the proof in the light most favorable to the plaintiff and resolve all factual disputes in the plaintiff's favor. *DiStefano*, 286 F.3d at 84.

---

[1] *Cruisephone, Inc. v. Cruise Ships Catering & Serv., N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002); *accord Savage & Assoc., P.C. v. Banda 26, S.A. (In re Teligent, Inc.)*, Nos. 01-12974, 03-3577, 2004 WL 724945, at *4 n.11 (Bankr. S.D.N.Y. Mar. 30, 2004); *North v. Winterthur Assurances (In re North)*, 279 B.R. 845, 852–53(Bankr. D. Ariz. 2002) ("[T]he Bankruptcy Rules effectively provide for worldwide service of process, limited only by the due process clause of the Fifth Amendment . . . which requires only that the defendant have the requisite minimum contacts with the United States, rather than with the forum state.") (internal quotations omitted). Whether or not applicable, the New York long arm statute, Section 302(a)(1) of the New York Civil Practice Law and Rules, also firmly supports personal jurisdiction over Defendants. All of Defendants' contacts with the United States, outlined below, occurred specifically in New York. Defendants allegedly held "active account[s]" in New York for a period of several years, and the transactions Defendants directed to and from those accounts form the basis of the Trustee's Complaint. *See, e,g.*, *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 153–54 (2d Cir. 1999) (finding long arm jurisdiction for claims arising out of defendant's transactions to and from its New York securities account).

### a. Minimum Contacts

Specific personal jurisdiction exists where a foreign defendant "purposefully direct[s] his activities at residents of the forum," and the underlying cause of action "arise[s] out of or relate[s] to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Kesar, Inc. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 405 B.R. 113, 122 (Bankr. D. Del. 2009). The defendant's activity need not have taken place within the forum, *Burger King,* 471 U.S. at 476, and a single transaction with the forum will suffice, *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). However, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Trustee has established that the Joint Tenancy Defendants have sufficient minimum contacts with the United States to support specific personal jurisdiction. The instant adversary proceeding "arises out of" Defendants' contacts with the United States; but for Defendants' financial transactions to and from their New York BLMIS bank accounts, there could be no fraudulent transfer claim against Defendants. *Payne v. Motorists' Mut. Ins. Co.*, 4 F.3d 452, 456 (6th Cir. 1993); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) ("An action arises out of contacts with the forum if, 'but for' those contacts, the cause would not have arisen."). Defendants' purposeful availment was sufficiently extensive that they should reasonably anticipate adjudication of their transactions to take place in the United States. *See GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 258 (Bankr. S.D.N.Y. 2004). The Customer Agreements executed by Defendants to open their New York BLMIS accounts contain Choice of

Law clauses deeming the contracts to be made in New York, subject to New York law.[2] Moreover, Defendants personally and continuously sent correspondence to the United States to direct transfers and withdrawals to and from these accounts for "many years with regular success"– the Guenzburger Tenancy from 1988 to 2006, and the Pinchou Tenancy from 1994 to 2006. Decl. John W. Moscow Supp. Trustee's Obj. Mot. Dismiss, Ex. 9. The Guenzburger Tenancy additionally designated a United States agent to act on its behalf in directing all financial transactions relating to its account. *See Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619–20 (1992) (finding minimum contacts where defendant issued debt instruments in United States Dollars payable in New York and appointed a financial agent in New York). Lastly, the Complaint alleges that these purposeful and profitable activities contributed to the massive losses suffered by victims of the BLMIS Ponzi scheme in the United States. *See* Pl.'s Compl. at ¶ 4.

Although not raised by the Trustee, there are also participatory factors indicating Defendants' waiver of any objection to personal jurisdiction in this adversary proceeding. Notably, in *Deak & Co., Inc.*, 63 B.R. 422, 431 (Bankr. S.D.N.Y. 1986), this Court found that the defendants effectively consented to personal jurisdiction by purposefully availing themselves of the protections afforded by United States bankruptcy law. In *Deak*, as here, defendants participated in the bankruptcy case by filing a notice of appearance and attending court hearings through their New York counsel. 63 B.R. at 431. Thus, the Defendants' voluntary participation in the instant adversary proceeding and request for two extensions of time could, in itself,

---

[2] Defendants' argument that they were unaware that New York law would apply because the words "New York" were handwritten into the Customer Agreement after its execution is unavailing given that Defendants also executed Margin Agreements containing typewritten Choice of Law clauses to the same effect. In any event, this is a factual dispute that this Court is constrained to resolve in Plaintiff's favor upon a motion to dismiss.

establish jurisdiction. Nonetheless, the Defendants' extensive profitable contacts with the forum, as outlined above, unquestionably satisfy the Trustee's burden.

**b. Reasonableness**

Defendants have failed to overcome the Trustee's showing by presenting a "compelling case" that jurisdiction would be unreasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."). In fact, the relevant reasonableness factors confirm that this Court's exercise of personal jurisdiction comports with "fair play and substantial justice." *Asahi Metal Indus. Co., Ltd., v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987). While this Court appreciates that a burden may be imposed upon Defendants by their location in Switzerland, "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114; *see also First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 403 (S.D.N.Y. 2002) (finding personal jurisdiction over Swiss defendant despite "significant" burden).

Here, the United States has a strong interest in applying the fraudulent transfer and preference provisions of its Bankruptcy Code. The Trustee's claims arise solely under United States bankruptcy law, and Defendants' transfers have allegedly deprived United States' creditors of the distribution to which they are entitled in the BLMIS liquidation. *See U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.)*, 68 B.R. 690, 699 (Bankr. S.D.N.Y. 1986) (finding that United States had a strong interest where claim arose solely under United States bankruptcy law); *First Capital*, 218 F. Supp. 2d at 403 (finding that New York had a

8

strong interest in seeing its fraudulent conveyance law applied where defendants' transfers allegedly frustrated New York judgments). The Trustee also has a strong interest in litigating in the United States, as all other defendants to this adversary proceeding reside in the United States, and BLMIS was a New York corporation with its files in the United States. *See In re McLean*, 68 B.R. at 699 (finding that jurisdiction was reasonable where files pertaining to the transaction were located in the forum). Finally, "the most efficient resolution of the controversy" would be in the United States, where the inextricably-related BLMIS liquidation is ongoing before this Court. *First Capital*, 218 F. Supp. 2d at 403 (quoting *Asahi*, 480 U.S. at 113–16).

Because Defendants have the requisite minimum contacts with the United States and have failed to present a compelling case as to why jurisdiction would be unreasonable, this Court concludes that it properly has personal jurisdiction over Defendants with respect to the Trustee's claim.

## II. Rule 12(b)(5) of the Federal Rules of Civil Procedure–Service of Process

Service upon an individual in a foreign country is governed by Rule 4(f) of the Federal Rules of Civil Procedure, which provides, in relevant part:

> Unless otherwise provided by federal law, an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents . . . .

FED. R. CIV. P. 4(f). The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") provides for international service to be made through Central Authorities designated by the contracting States. Hague Convention art. 1, Nov. 15, 1965. Significantly, Article 10(a) of the Hague Convention states that "*provided the State of destination does not object*, the present Convention shall

not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad." Hague Convention art. 10(a) (emphasis added).

As neither party denies, the Trustee's direct service upon Defendants in Switzerland was insufficient to satisfy Rule 4(f) and the Hague Convention. The Trustee's attempted service consisted of mailing process via regular mail, custody of the United States Postal Service, directly to Defendants' addresses in Switzerland on June 25, 2009. Decl. Jack S. Hoffinger Supp. Mot. Dismiss, Ex. 1. As a signatory to the Hague Convention, Switzerland authorizes service to be made by the Swiss Central Authority upon request of a foreign applicant.[3] However, Switzerland has also made a formal objection to Article 10(a), thereby prohibiting transmission of judicial documents directly to persons abroad.[4] Because direct mail is not an "internationally agreed means" permitted by Rule 4(f) and the Convention, the Trustee's attempted service of process was insufficient.[5]

While sympathetic to the Trustee's argument that Defendants explicitly or implicitly waived their right to object to service through their post-complaint conduct, this Court finds that the Trustee's contentions are a "near miss." The Trustee does not allege that any request for a waiver of service was sent to Defendants pursuant to Rule 4(d), and no waiver has been filed. *See* FED. R. CIV. P. 4(d), made applicable herein by FED. R. BANKR. P. 7004(d). The stipulation

---

[3] Hague Convention art. 2–6 ("Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.").

[4] Hague Convention, Declarations Reservations, 5(a) ("Switzerland declares that it is opposed to the use in its territory of the methods of transmission provided for in Articles 8 and 10.").

[5] Plaintiff's reliance on this Court's holding in *Takeout, Inc. v. Favour Century Limited (In re Takeout, Inc.)*, No. 07-01666, 2009 LEXIS 735, at *5–7 (Bankr. S.D.N.Y. Mar. 17, 2009), for the proposition that service was properly made upon the Guenzburger Tenancy by mailing process domestically to the its authorized trading agent is misplaced. The defendant in *In re Takeout, Inc.* was a corporation, service of which is governed by Rule 4(b)(3), allowing corporations to be served by mailing process to an authorized agent. FED. R. CIV. P. 4(b)(3); *In re Takeout, Inc.,* 2009 LEXIS 735, at *5–7. As discussed above, such method is not authorized, and is in fact expressly prohibited, by Rule 4(f) and the Hague Convention, which govern service on the Guenzburger Tenancy.

the Trustee claims to be an express waiver does not contain any language evidencing a negotiation or a relinquishment of Defendants' rights or defenses; it is a bare extension of time for Defendants to respond to the Complaint. *See* Decl. John W. Moscow Supp. Trustee's Obj. Mot. Dismiss, Ex. 16. While the Trustee points to two cases in which defendants were found to have waived service by continuously participating in the litigation and actively frustrating service, Defendants' stipulating to extensions of time technically falls short of their reach. *See, e.g.*, *Cadles of Grassy Meadow II, LLC v. O'Connor*, No. 08-3455-CV, 2009 WL 1737320, at *2 (2d Cir. Jun. 19, 2009) (finding waiver where service was made several times, default judgment was entered, and defendant misled plaintiff and court as to proper address, recipient, and method of service). Furthermore, that a defendant has actual notice of the litigation or receives a summons and complaint cannot substitute for proper service. *Cruisephone, Inc. v. Cruise Ships Catering & Serv., N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 334 (Bankr. E.D.N.Y. 2002). ("Notice cannot by itself validate an otherwise defective service.").

This Court agrees with the Trustee, however, that dismissal of the adversary proceeding is not warranted at this time, as no deadline for service has expired. While a plaintiff must complete service upon a domestic defendant within 120 days of filing the complaint pursuant to Rule 4(m), the same statute expressly states that this time limitation "does not apply to service in a foreign country under Rule 4(f)." [6] This exclusion "does not mean that the plaintiff enjoys an unlimited amount of time to effectuate service;" however, a plaintiff is entitled to a "reasonable time" to exercise due diligence to serve the foreign defendant. *Savage & Assoc., P.C. v. Banda 26, S.A. (In re Teligent, Inc.)*, Nos. 01-12974, 03-3577, 2004 WL 724945, at *3 (Bankr.

---

[6] *See* FED. R. CIV. P. 4(m), made applicable herein by FED. R. BANKR. P. 7004(a)(1). It should be noted that were the 120-day time period to apply, Plaintiff's time to serve would not have expired as of the date of the Motion to Dismiss. *See* Pl.'s Mem. Law at p. 9.

11

S.D.N.Y. Mar. 30, 2004); *see also Off. Comm. Unsec. Cred. v. Mittemyer (In re Southold Dev. Corp.)*, 148 B.R. 726, 730 (E.D.N.Y. 1992) (finding that where the 120-day time limit does not apply, a court has discretion to dismiss a complaint if defendant is not properly served within a reasonable time). Here, there is no evidence to suggest that the Trustee cannot properly serve Defendants within a reasonable amount of time. In fact (reflecting a belt-and-suspenders effort), declarations submitted by both parties state that the Trustee has already recommenced service on September 16, 2009 in compliance with the Convention and the law of Switzerland. Decl. John W. Moscow Supp. Trustee's Obj. Mot. Dismiss at ¶ 30; Decl. Jack S. Hoffinger Supp. Mot. Dismiss at ¶ 11. Accordingly, the Motion to Dismiss is denied without prejudice to Defendants' right to renew such motion should Plaintiff fail to properly effect service within a reasonable time. *See, e.g.*, *In re Teligent*, 2004 WL 724945, at *3 (denying defendant's motion to dismiss for insufficient process without prejudice to renew if plaintiff failed to serve within a reasonable time).

Of course, nothing prevents Defendants from waiving service formalities in favor of eliminating the inefficient traverse portion of the litigation that now stands in the way of getting to the merits.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss is hereby denied with respect to the relief sought under Rule 12(b)(2), 12(b)(6), and 12(e). With respect to the ground of insufficient service of process under Rule 12(b)(5), the Motion to Dismiss is denied without prejudice to Defendants' right to renew if the Trustee fails to effect proper service within a reasonable time. To accommodate any uncertainty, the exception for foreign service in Rule 4(f)

together with the stipulated extensions make it clear to this Court that a "reasonable time" should

be liberally construed.

IT IS SO ORDERED.


Dated: New York, New York
       October 26, 2009

                                  /s/ Burton R. Lifland
                                  UNITED STATES BANKRUPTCY JUDGE