**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan, Esq.
Karin S. Jenson, Esq.
Kathryn M. Zunno, Esq.
Esterina Giuliani, Esq.

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Estate of Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br>v.<br><br>COHMAD SECURITIES CORPORATION, *et. al.*,<br><br>Defendants. | Adv. Pro. No. 09-01305 (SMB) |

**TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
JONATHAN GREENBERG'S MOTION FOR A PROTECTIVE ORDER AND
TO QUASH TWO SUBPOENAS UNDER FED. R. CIV. P. 45**

Irving H. Picard (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, and the substantively consolidated estate of Bernard L. Madoff ("Madoff") individually, by his undersigned counsel, hereby submits this opposition to Defendant Jonathan Greenberg's Motion for a Protective Order and to Quash Two Subpoenas Under Fed. R. Civ. P. 45 (the "Motion").

## Preliminary Statement

Tracing transfers of funds from BLMIS to defendants is at the core of the Trustee's adversary proceedings. With respect to Cohmad Securities Corp. ("Cohmad"), Transfers[1] were made to Cohmad and its registered representatives (the "Cohmad Representatives"), including Jonathan Greenberg ("Greenberg"), in a variety of ways over the approximately twenty-five years that Cohmad was in business. In the absence of Greenberg—who was a BLMIS customer himself—disclosing and stipulating to the full universe of avoidable transfers he received from BLMIS and Cohmad (as he is in the best position to do so), the Trustee seeks discovery to gain visibility into these transfers, the total of which is the amount the Trustee seeks to recover from Greenberg.

The records that are implicated by the challenged subpoenas to Citibank, N.A. ("Citibank") and JPMorgan Chase, N.A. ("JPMorgan") (together, the "Subpoenas" and the "Subpoenaed Records")[2] are relevant to the Trustee's identification and tracing of the portion of

---

[1] "Transfers" is defined in the First Amended Complaint as the more than $245 million in payments or other transfers that BLMIS made to one or more of the Cohmad defendants. (Am. Compl. ¶ 135.)

[2] The Subpoenas seek documents relating to Greenberg and other Cohmad defendants. Those other Cohmad defendants have not challenged the Subpoenas or otherwise joined this Motion. To the extent that the Court considers this Motion, the Trustee respectfully requests that the Court consider it as to Greenberg only.

the Transfers or other avoidable transfers received by Greenberg from BLMIS, Cohmad, or other defendants (the "Greenberg Transfers"). Despite arguing that the Trustee should obtain such information from other sources, Greenberg maintains that he has no relevant bank records in his possession, custody, and control, which makes the Subpoenaed Records all the more necessary. As noted above, the amount and receipt of the Greenberg Transfers remains a disputed issue in the case, and therefore the discovery sought through the Subpoenas is neither overbroad nor disproportionate. The Trustee would have explained these points to Greenberg had a good faith meet and confer between the parties or conference with the Court occurred, but Greenberg filed the Motion mere hours after asking the Trustee for case law to support his position (and before the Trustee had a chance to respond). The Trustee respectfully requests that the Court deny the Motion.

## Background

Defendant Greenberg was a registered representative of Cohmad since 1986.[3] As alleged in the First Amended Complaint (the "Amended Complaint"), Cohmad's primary business was recruiting customers for Madoff and funneling their money into BLMIS. (Am. Compl. ¶ 5.) By the time Madoff's Ponzi scheme collapsed, Cohmad and the Cohmad Representatives had directed billions of dollars to BLMIS, accounting for approximately 20% of BLMIS's active customer accounts. (*Id.*) Greenberg referred approximately fifty-five (55) accounts to BLMIS. (*Id.* ¶ 24.) He also maintained his own investment advisory account with BLMIS. (*Id.*)

As alleged in Paragraph 59 of the Amended Complaint, the Cohmad Representatives, including Greenberg, were paid for placing customers' money into the BLMIS Ponzi scheme. (Am. Compl. ¶ 59.) For the Cohmad Representatives other than Maurice J. Cohn and Robert

---

[3] The FINRA BrokerCheck Report for Greenberg shows that he was registered at Cohmad from October 1986 to January 2009.

3

Jaffe, BLMIS would transmit money directly to Cohmad, which would in turn make payments to the Cohmad Representatives, including Greenberg. (*Id.*)[4] Exhibits 2 and 4 of the Amended Complaint provide further information regarding the Transfers from BLMIS to Cohmad and the Cohmad Representatives. The Cohmad Representatives, including Greenberg, received no less than $113,080,310.05 of customer property for referring customers into the BLMIS Ponzi scheme. The Trustee has reserved his right in the Amended Complaint to supplement information on any transfers and to seek to avoid and recover additional transfers.

The Trustee served his First Set of Requests for the Production of Documents to Jonathan Greenberg (the "Trustee's Requests") on December 22, 2011. Greenberg served his responses and objections on January 23, 2012. The Trustee's Request No. 17 sought: "All documents and/or communications concerning monies, commissions, remuneration, and/or other benefits conferred upon You by Cohmad, BLMIS and/or Madoff." In addition, the Trustee's Request No. 19 sought: "All documents concerning Defendant's bank accounts or brokerage accounts in which any funds or other consideration was received and/or transferred from and/or provided by BLMIS or Cohmad."

Greenberg's response to both requests was as follows: "Defendant objects to Request No. [17 and 19] on the grounds that it is over broad, unduly burdensome, fails to include a reasonable temporal limitation or any temporal limitation, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the extent the Request seeks documents or information that are confidential or otherwise constitute private personal

---

[4] The Amended Complaint also alleges that some or all of the Transfers, including the Fraudulent Commissions (as defined in the Amended Complaint), were subsequently transferred by Cohmad directly or indirectly to the Cohmad Representatives and/or other defendants and/or their agents in the form of payment of commissions or fees. (Am. Compl. ¶ 191.)

4

information. Subject to and without waiving any objection, *Defendant has no documents in his possession, custody or control in response to this Request*." (emphasis added.)

Indeed, this was Greenberg's response to nearly every single one of the Trustee's Requests, and he ultimately produced to the Trustee only tax returns for the years 2000 to 2008, a list of alleged balances in a number of BLMIS accounts, and a copy of $1 million check drawn on a Citibank account to BLMIS from Doris Greenberg, who Greenberg referred to BLMIS. In a subsequent meet and confer between the parties concerning the Trustee's Requests, Greenberg continued to maintain that he had no additional responsive documents. Thus, Greenberg has produced only one bank record to the Trustee—a cancelled check to BLMIS signed by another investor related to an account Greenberg referred—which, although responsive to the Trustee's Requests, is not evidence of the Greenberg Transfers.

The Trustee has issued a number of subpoenas to banking institutions in connection with this action that seek the Cohmad defendants' bank records from relevant time periods. The Subpoenas for Greenberg's bank records seek records from two banks where the Trustee believes Greenberg maintained one or more accounts, Citibank and JPMorgan, for the time period from 1993 to 2009, the year after the collapse of BLMIS.[5] The Subpoenas contain the requests that the Trustee typically makes of banks in the absence of a complete production of relevant bank records from a defendant and/or where a defendant does not stipulate to the amount and dates of transfers from BLMIS. Because Greenberg produced only one bank record and the parties have not stipulated to the amounts and dates of the Greenberg Transfers, the Trustee is seeking the Subpoenaed Records.

---

[5] Despite Greenberg's contention in his Motion, the Trustee did provide advance notice to Greenberg's counsel one business day before the Subpoenas were served. The email providing this notice (without the voluminous attachments thereto) is attached as Exhibit 1 to the Declaration of Karin S. Jenson, Esq., which is attached as Exhibit A.

5

**Argument**

At the outset, it should be noted that Greenberg did not make a good faith effort to resolve this dispute or seek a conference with the Court before the motion was filed, as is required under the Court's Chambers Rules. The Trustee attempted to meet and confer with Greenberg, but no telephonic or in-person discussion occurred. As reflected in the correspondence attached as Exhibit C to the Declaration of Ernest Edward Badway, Esq. in Support of Defendant's Motion for a Protective Order and to Quash the Subpoenas (the "Badway Declaration"), Greenberg's counsel advised the Trustee that he objected to the Citibank subpoena and that Citibank should not produce documents until ordered to do so by the Court. Counsel for the Trustee asked Mr. Badway to explain the basis for his objection and/or hold a telephonic meet and confer, and the parties exchanged several emails. (*See* Badway Decl. 36-38.) As reflected in the last email of Exhibit C to the Badway Declaration, counsel for Greenberg took the position that his client's receipt of commissions from Cohmad did not constitute transfers of customer property, and asked for case law to support the Trustee's pursuit of bank records. Approximately three hours later, before the Trustee had a chance to respond, Greenberg filed this Motion.

In any event, Greenberg's reasons for seeking to quash the Subpoenas are insufficient. First, the Trustee is not seeking these bank records to establish that Greenberg "co-mingled [sic] personal assets or otherwise intertwined his personal assets at issue in this case." (Def.'s Mot. 4.) Rather, as the Court is aware, the Trustee seeks records through Federal Rule of Civil Procedure ("FRCP") 45 from defendants' banks to help establish or confirm the dates and amounts of transfers received from BLMIS, directly or indirectly. (*See, e.g.*, Disc. Conference Hr'g Tr. 6-7, *Picard v. Robert Auerbach*, Adv. Pro. No. 10-4891 (SMB) (Bankr. S.D.N.Y. May

6

14, 2014) (discussing the Trustee's service of subpoenas on banks to obtain records relevant to initial and subsequent transfers received by the defendants).) The Trustee is entitled to discovery to ascertain this information. *See Picard v. Chais*, 445 B.R. 206, 236 (Bankr. S.D.N.Y. 2011) (stating that the Trustee "is an outsider to these transactions and will need discovery to identify the specific [transfers] . . . by date, amount and the manner in which they were effected"); *In re Livecchi*, Adv. Pro. No. 11-02027, 2014 WL 6668886, at *4, 12 (W.D.N.Y. Nov. 20, 2014) (noting that the bankruptcy trustee evidenced transfers to the defendants through bank records obtained by issuing third-party subpoenas).

The cases Greenberg cites in his Motion do not suggest otherwise, given that they simply stand for the proposition that discovery must be relevant and within the scope of FRCP 26. *See, e.g.*, *Carey v. Berisford Metals Corp.*, No. 90 CIV. 1045 (JMC), 1991 WL 44843, at *8 (S.D.N.Y. Mar. 28, 1991) (denying motion to quash subpoena where the discovery request fell "within the broad scope of discovery allowed under Rule 26(b)(1)"); *Arias-Zeballos v. Tan*, No. 06 CIV. 1268(GEL)KNF, 2007 WL 210112, at *2 (S.D.N.Y. Jan. 25, 2007) (finding that where the court had stricken allegations from the plaintiff's complaint relating to a certain transaction, subpoenas issued by the plaintiff seeking information concerning that transaction were inappropriate because the information was not relevant to her claims). Here, the bank records are within the scope of FRCP 26 and relevant to the Trustee's claims. Further, the Litigation Protective Order ("LPO") in place in these matters contemplates that bank records are relevant, as Paragraph 4 expressly states that information identifying the amounts of withdrawals, redemptions or transfers are not confidential. (LPO ¶ 4, *SIPC v. BLMIS*, Adv. Pro. No. 08-1789 (SMB) (Bankr. S.D.N.Y. June 6, 2011), ECF No. 4137.)

Second, even accepting Greenberg's contention in the Motion that his bank records are confidential (which they are not under Paragraph 4(e) of the LPO), that is not a basis for quashing or modifying the Subpoenas.  As noted above, the parties have a protective order in place that governs the designation and treatment of documents a producing party contends are confidential.  It is improper to withhold relevant documents on the basis of confidentiality when a protective order is in place to protect them.  *See In re Penthouse Exec. Club Compensation Litig.*, No. 10 CV 1145, 2012 WL 1511772, at *1 (Bankr. S.D.N.Y. Apr. 30, 2012); *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784 2012 WL 2108220, at *3 (S.D.N.Y. June 11, 2012).

Third, Greenberg's argument that the Subpoenas should be quashed because the Subpoenaed Documents may contain irrelevant information is unavailing.  The Trustee is entitled to know the full universe of the Greenberg Transfers.  Moreover, the Trustee is entitled to trace the disposition of the Greenberg Transfers, and the Subpoenaed Records may reveal Greenberg Transfers that are not reflected in other documents in the case.  Finally, what Greenberg contends as "irrelevant" in the Subpoenaed Records—transfers of funds from Greenberg to others—are discoverable, given that the Trustee is entitled to investigate the disposition of the Greenberg Transfers.

### **Conclusion**

For the foregoing reasons, the Trustee respectfully requests that the Motion be denied.

| | |
|---|---|
| Dated: August 11, 2015<br>New York, New York | **BAKER & HOSTETLER LLP**<br><br>By: /s/ Karin S. Jenson<br>David J. Sheehan, Esq.<br>Email: dsheehan@bakerlaw.com<br>Karin S. Jenson<br>Email: kjenson@bakerlaw.com<br>Kathryn M. Zunno<br>Email: kzunno@bakerlaw.com<br>Esterina Giuliani<br>Email: egiuliani@bakerlaw.com<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 589-4200<br>Facsimile: (212) 589-4201 |